**AMERICAN–ARAB ANTI–DISCRIMINATION COMMITTEE, Arab–American Democratic Federation, Association of Arab–American University Graduates, Irish National·Caucus, et al., Plaintiffs–Appellees,**

**v.**

**Richard· THORNBURGH,\* Attorney General; Alan C. Nelson, Commissioner, INS, Harold Ezell; Ernest E. Gustaf-**

\* Richard Thornburgh has been substituted for Edwin Meese III, Fed.R.App.P. 43(c).

son, District Director, U.S. Immigration and Naturalization Service, Defendants–Appellants.

No. 89–55358.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1990.

Decided July 26, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc July 20, 1992.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Steven Richards Valentine, Deputy Asst. Atty. Gen., Douglas Letter, Appellate Litigation Counsel, Linda S. Wendtland, Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

David Cole, Michael Ratner, Center for Constitutional Rights, New York City, Paul L. Hoffman, Mark D. Rosenbaum, Carol Sobel, ACLU Foundation of Southern California, Los Angeles, Cal., for plaintiffs-appellees.

Before: POOLE and THOMPSON, Circuit Judges, and PRO, District Judge.[**]

POOLE, Circuit Judge:

The government appeals from the district court's declaratory judgment that sections 241(a)(6)(D), (F)(iii), (G)(v), and (H) of the McCarran–Walter Act of 1952, codified in 8 U.S.C. §§ 1251(a)(6)(D), (F)(iii), (G)(v), and (H) (the Act), are unconstitutionally overbroad in violation of the first amendment.[1] We affirm in part, reverse in part, vacate the judgment and remand for proceedings not inconsistent with this opinion.

## FACTS

In January 1987, the Immigration and Naturalization Service ("INS") detained plaintiffs-appellees (individual appellees), Bashar Amer, Ayman Mustafa Obeid, Julie Nuangugi Mungai, Aiad Khaled Barakat, Naim Nadim Sharif, and Amjad Mustafa Obeid, all non-immigrant aliens, for routine status, non-ideological violations under 8 U.S.C. §§ 1251(a)(2) and 1251(a)(9), and for violations of section 1251(a)(6) because of their membership in the Popular Front for the Liberation of Palestine (PFLP). PFLP

[**] Honorable Philip M. Pro, United States District Judge, District of Nevada, sitting by designation.

1. In relevant part, section 1251 provides:
 (a) Any alien in the United States ... shall, upon order of the Attorney General, be deported who—

 \* \* \* \* \* \*

 (6) is or at any time has been, after entry, a member of the following classes of aliens:

 \* \* \* \* \* \*

 (D) Aliens not within any of the other provisions of this paragraph who advocate the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, or who are members of or affiliated with any organization that advocates the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, either through its own utterances or through any written or printed publications issued or published by or with the permission or consent of or under the authority of such organization or paid for by the funds of, or funds furnished by, such organization;

 \* \* \* \* \* \*

 (F) Aliens who advocate or teach or who are members of or affiliated with any organization that advocates or teaches ... (iii) the unlawful damage, injury, or destruction of property; ...
 (G) Aliens who write or publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or who knowingly have in their possession for the purpose of circulation, publication, distribution, or display, any written or printed matter, advocating or teaching opposition to all organized government, or advocating or teaching ... (v) the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship;
 (H) Aliens who are members of or affiliated with any organization that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display any written or printed matter of the character described in paragraph (G) of this subdivision.

is an organization which the government alleges advocates and teaches the "international and governmental doctrines of world communism," as recited in section 1251(a)(6)(D). Specifically, the INS alleged that the individual appellees violated sections 1251(a)(6)(D), (G)(v), and (H). In January 1987, the INS also began deportation proceedings against Khader Musa Hamide and Michel Ibrahim Shehadeh, permanent resident aliens, for their membership in the PFLP, alleging violations of sections 1251(a)(6)(D), (G)(v), and (H). On April 23, 1987, four days prior to the hearing set in this case by the district judge to consider plaintiffs' request for a preliminary injunction, the INS dropped its section 1251(a)(6) charges against the individual appellees, but retained the non-ideological charges.[2] The INS also changed the charges against Hamide and Shehadeh, alleging that they had violated section 1251(a)(6)(F)(iii).[3]

## PROCEDURAL HISTORY

On April 3, 1987, the individual appellees, joined by various organizations, including the American–Arab Anti–Discrimination Committee (American–Arab), and Hamide and Shehadeh, filed this complaint in the District Court for the Central District of California claiming that section 1251(a)(6)(D) violated the first and fifth amendments, that the government engaged in selective prosecution in violation of the first and fifth amendments, and that the INS procedures could not provide them with a fair and impartial hearing. They sought declaratory and injunctive relief. On May 12, 1987, the complaint was amended to include first and fifth amendment challenges to sections 1251(a)(6)(D), (F)(iii), (G)(v), and (H), and to include the claim that government misconduct deprived plaintiffs

of due process. On May 21, 1987, the district judge dismissed Hamide's and Shehadeh's claims as to sections 1251(a)(6)(F)(iii) for lack of jurisdiction and stayed the other claims pending a ruling by this court on the petition for writ of mandamus. Hamide and Shehadeh's petition for writ of mandamus was denied by order of this court on February 24, 1988. *Hamide v. United States District Court for the Central District of California,* No. 87–7249.

On June 15, 1988, plaintiffs filed a second amended complaint which retained their first and fifth amendment challenges but added a challenge to the Foreign Relations Authorization Act, (FRAA) Fiscal Years 1988 and 1989, Pub.L. No. 100–204, § 901, 101 Stat. 1331, 1399 (1987) (amended October 1, 1988). In a published memorandum opinion and order, *American–Arab Anti–Discrimination Committee v. Meese,* 714 F.Supp. 1060, 1084 (C.D.Cal.1989), the district judge concluded that the challenged provisions of the McCarran–Walter Act were substantially overbroad in violation of the first amendment. The court accordingly granted plaintiffs' motion for summary judgment and request for declaratory relief. However, believing that declaratory relief provided an adequate remedy at law, the district court denied injunctive relief. Id. at 1063. The district court also held that, given this relief, there was no need to address the challenge to the constitutionality of the FRAA. Id. On January 26, 1989, the district court directed entry of final judgment pursuant to Fed.R.Civ.P. 54(b). The district court retains jurisdiction over appellees' remaining claims. We have jurisdiction over final orders pursuant to 28 U.S.C. § 1291.

**2.** During the pendency of this appeal, the INS initiated deportation proceedings against the individual appellees under the non-ideological charges. Bashar Amer was found not deportable. The INS has appealed this decision to the Board of Immigration Appeals ("BIA"). Amjad Obeid and Ayman Obeid were found deportable; however, no final order of deportation has been entered in any of these proceedings. Amjad Obeid has applied for suspension of deportation pursuant to 8 U.S.C. § 1254(a), and Ayman Obeid has applied for adjustment of status pur-

suant to 8 U.S.C. § 1255(a). Both applications are pending review by the INS. The deportation proceedings of the remaining individual appellees remain closed pending review of their amnesty applications under 8 U.S.C. § 1255a.

**3.** The deportation proceedings brought against Hamide and Shehadeh for violation of section 1251(a)(6)(F)(iii) were closed pending resolution of this appeal.

## THE DISTRICT COURT'S RULING

In his memorandum opinion and order, the trial judge first considered whether the individual and organizational plaintiffs had standing. Id. at 1064–74. He determined that he was without jurisdiction to hear the constitutional challenges of Hamide and Shehadeh. *Id.* at 1064. They do not appeal this determination. The court held that the other individual appellees had standing because, although they were not presently charged under the challenged provisions of the McCarran–Walter Act, they had shown that they were in jeopardy of being so charged in the future. The court held that the government's continuing belief that the individual appellees belonged to a world-wide "communist" organization, the government's unwillingness to disavow any intent to bring the same charges against the individual appellees, the fact that the government's current manifestation of its willingness to use similar McCarran–Walter Act provisions against Hamide and Shehadeh on account of their membership in the PFLP, and the individual appellees' expressed intent to continue to engage in the conduct for which they were originally charged, all supported the finding of their standing. *Id.* at 1064–71. The court dismissed all the organizational plaintiffs except American–Arab. *Id.* at 1071–72. The dismissed organizations do not appeal.

On the merits, the court determined that aliens are entitled to the same degree of first amendment protections as are citizens. Id. at 1082. Therefore, applying the test articulated in *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), the court held that the challenged statutory provisions were substantially overbroad under the first amendment because they penalized both protected and unprotected speech. 714 F.Supp. at 1082–84.

## DISCUSSION

We agree with the district court that the individual appellees have standing. We nevertheless determine that the district court should have stayed its exercise of jurisdiction because, in our view, the first amendment issues tendered by appellees are not ripe for review. We therefore vacate the district court's order as to the substantive issues. We reverse the declaratory judgment, and we remand the case to the district court for further proceedings not inconsistent with this opinion.

### I. *Justiciability—Standing*

█ The government argues that appellees' claims are not justiciable because they do not have standing. We review *de novo* the district court's determination that the individual appellees and American–Arab do have standing, *Polykoff v. Collins*, 816 F.2d 1326, 1331 (9th Cir.1987), while the underlying factual determinations are reviewed under the clearly erroneous standard. *Id.*

### A. Standing and the Individual Appellees

Under Article III of the Constitution, it is a jurisdictional prerequisite that plaintiffs present an actual "case or controversy". *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *San Francisco County Democratic Central Comm. v. Eu*, 826 F.2d 814, 821 (9th Cir.1987), *aff'd* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). To satisfy this requirement plaintiffs must show, *inter alia*, that they have standing. Thus, plaintiffs must demonstrate:

> "at an irreducible minimum ... 'that [they] personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976)." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464,

472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

The essence of the government's standing argument with respect to the individual appellees is that they cannot show an immediate threat of harm. The government argues that, although once charged with the challenged provisions, the individual appellees are not now so charged. The government additionally argues that there is no imminent likelihood that they will again be charged under the challenged provisions. It notes that the only pending proceedings against the individual appellees are for routine status violations and that "the [INS] has little or no incentive to reinstate the 'world communism' charges or to bring other charges under the nonroutine provisions at issue here." Government's Opening Brief at 22. The threats to the individual appellees are therefore very attenuated because their injuries are unlikely to occur unless the government fails to sustain its routine violation charges and again institutes charges under the challenged provisions. The government analogizes this case to *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 961, 22 L.Ed.2d 113 (1969). Finally, citing *Laird v. Tatum*, 408 U.S. 1, 12–15, 92 S.Ct. 2318, 2325–27, 33 L.Ed.2d 154 (1972), and *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971), the government avers that it is pursuing non-controversial administrative procedures and the mere fact that it has not forsworn use of the challenged provisions does not confer standing upon the individual appellees. Instead, it argues this court should look to the totality of the circumstances to determine whether the individual appellees face an *immediate* threat of injury. Therefore, it is the government's position, it is irrelevant that Hamide and Shehadeh have been charged with violations of the challenged provisions because, as "permanent resident" aliens, they could not be deported for routine status violations. The same is true of the exclusion proceedings involving Fouad Rafeedie, a permanent resident and an alleged member of the PFLP, which were initiated when he tried to reenter the country. *See*

*Rafeedie v. INS*, 880 F.2d 506 (D.C.Cir. 1989).

The individual appellees contend that their standing is not affected by the fact that they are not currently charged with violations of the challenged provisions. They assert that they intend to engage in the proscribed conduct in the future and that the government has demonstrated its continued intention to enforce the challenged provisions. Since there is a continued threat of prosecution, individual appellees argue, standing exists. Therefore, they assert there is standing. Moreover, they argue, while they might ostensibly be deported for routine immigration violations, the real reason for such deportation would be based upon their participation in the constitutionally protected activity rather than the commission of allegedly routine violations. Finally, they challenge as disingenuous the government's argument that it has tactical reasons to recharge the individual appellees. They note that during the pendency of this appeal, the government added charges against Hamide and Shehadeh based on section 1251(a)(6)(F)(ii), which had not been challenged in the district court. This change, they say, proves that the government has a ready stand-by: invocation of the challenged provisions whenever it may deem that appropriate.

■ Because the individual appellees are not currently charged with violations of the challenged statutory provisions, they must show that the threat of future injury is both "real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). This standing requirement is not satisfied merely by showing some "conjectural" or "hypothetical" injury, *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), or an injury which is "subjective," *Laird*, 408 U.S. at 13–14, 92 S.Ct. at 2325–26. Moreover, " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy ... if unaccompanied by any continuing, present adverse effects.' " *Lyons*, 461 U.S. at 102, 103 S.Ct. at 1665 (quoting *O'Shea*, 414 U.S. at 495–96, 94 S.Ct. at 676).

■ We conclude, however, that the individual appellees meet the standing test. It is not necessary that they currently be subject to the challenged provisions in order to have standing; nor need they actually commit the forbidden provisions as a means of showing them to be in the dilemma which the court described in *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974), as "the hapless plaintiff between the Scylla of intentionally flouting ... [the] law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *See also Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). Nor is this a case in which the individual appellees' claimed threat of future injury is merely "hypothetical" or "conjectural." Already they have once been charged with the challenged provisions, which charges were dropped, not because they were considered inapplicable, but for tactical reasons. *Compare Younger v. Harris*, 401 U.S. at 42, 91 S.Ct. at 749 (denying standing in part because plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible"). Presumably, then, the individual appellees need not run the risk of the consequences of another violation of the challenged provisions in order to find protection.

■ However, even if they had not already been charged with violating the challenged provisions, the individual appellees would have standing. The challenged statute, unlike the government conduct challenged in *Laird*, is regulatory and proscriptive in nature, *see* 408 U.S. at 11, 92 S.Ct. at 2324, and the penalty for noncompliance is high. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93, 108 S.Ct. 636, 642–43, 98 L.Ed.2d 782 (1988).[4] Moreover, the individual appellees fall within the class of persons whose conduct the statute proscribes, *see Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973), and against whom the government has already instituted proceedings under the challenged provisions. *See Steffel*, 415 U.S. at 459, 94 S.Ct. at 1215. Each case in which the government already has ventured into prosecution underscores the government's willingness to use the challenged provisions against aliens who are considered to be members of the PFLP. Furthermore, if it is true that Hamide and Shehadeh have been charged with the challenged provisions merely as a means of bringing about their deportation (since they have permanent resident status) this lends credence to their argument that the government may yet bring the challenged charges against the individual appellees. Their fears are therefore neither speculative nor imaginary as in *Younger*, 401 U.S. at 42, 91 S.Ct. at 749.

We turn now to the government's argument that the likelihood that the individual appellees are unlikely to be recharged for violations of the challenged provisions because to do so would be administratively inefficient. We do not readily see that the government's refusal to disavow future use of the challenged provisions alone provides standing to the individual appellees. Nevertheless, it is an attitudinal factor the net effect of which would seem to impart some substance to the fears of the individual appellees. *See American Booksellers Ass'n*, 484 U.S. at 393, 108 S.Ct. at 643 (this "alleged danger of the statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution"); *Dombrowski v. Pfister*, 380 U.S. 479, 494, 85 S.Ct. 1116, 1125, 14 L.Ed.2d 22 (1965) ("So long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one"); *NAACP v. City of Richmond*, 743 F.2d 1346, 1353 (9th Cir.1984).

---

4. While the government correctly notes that deportation is not a criminal sanction, it has long been considered by the Supreme Court as "a drastic sanction, one which can destroy lives and disrupt families...." *See, e.g., Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 479, 83 S.Ct. 1819, 1824, 10 L.Ed.2d 1013 (1963).

Finally, this case is not an analog of *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), which is cited to us as an argument against standing. Zwickler was convicted of violating New York's election laws during his Congressional campaign. While his appeal to the Supreme Court was pending, Zwickler became a judge. The Supreme Court denied review because it appeared unlikely that Zwickler would again be a candidate for Congress. *Id.* at 109, 89 S.Ct. at 960. Unlike Zwickler's case, the positions of the individual appellees have not changed materially since the government withdrew the ideological charges against them. They are still subject to deportation either because the challenged statute may be invoked, or, alternatively, for routine status violations, and in either case, the two procedures are means of reaching the same result. In any event, on the whole, we cannot say that the cases of the individual appellees are such as to render it unlikely that they would engage in the acts which allegedly rendered them subject to deportation under the challenged provisions.

For the above reasons, the individual appellees have standing. We therefore affirm the district court's finding on this issue.

## B. Standing and American–Arab

 American–Arab sues in its own right and on behalf of its members. American–Arab has standing for such suit if " '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9, 108 S.Ct. 2225, 2231–32, 101 L.Ed.2d 1 (1988) (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

The government argues that American–Arab does not have standing to sue because it has not shown that its individual members would have standing. The government challenges the district court's reliance on the declaration of the Director of American–Arab's Legal Services Department (the "Director") which states that American–Arab "has members who would support the PFLP, and hold PFLP views which they would advocate...." Excerpt of Record at 73. The government contends that this is insufficient proof that American–Arab's members wish to engage in the activities proscribed by the challenged provisions. For the same reason, the government argues that American–Arab's statement in appellees' complaint, that its members receive and distribute literature which the government might consider a violation of one of the challenged provisions and that they financially and politically support, or would support, the PFLP are insufficient. Finally, the government argues that injury is not shown by alleging that the first amendment rights of American–Arab members have become "chilled." The government notes that the " '[c]hilling effect' is cited as the *reason* why the governmental imposition is invalid rather than as the *harm* which entitles the plaintiff to challenge it." *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378 (D.C.Cir.1984) (emphasis in original); *see also Laird*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.' " (citation omitted)).

In response, appellees argue that the Director's declaration is sufficient because American–Arab need not allege that its members *will* become members of or affiliate with the PFLP; the statute, they argue, proscribes oral and written advocacy as well. The appellees make no further argument specifically addressed to the standing of American–Arab, although presumably they would adopt the arguments made in support of the standing of the individual appellees.

American–Arab, according to appellees' complaint, has more than 17,000 members

and 6 local chapters in the United States. It publishes information of concern to Arab–Americans and provides legal services in defamation, discrimination, and immigration cases. Some of its members are of Palestinian origin and "engage in the kinds of activities which appear to be the basis for the pending deportation proceedings...." Excerpt of Record at 42. Members also read and distribute literature such as *Al Hadaf* and *Democratic Palestine* which the government indicates are periodicals which speak for the PFLP, "'a self-described ... Marxist–Leninist organization....'" Government's Opening Brief at 40.

We need not decide whether or when allegations of "chilling effect" are sufficient injury to support standing. Even if its members are "chilled," American–Arab has not alleged sufficient facts to support standing. American–Arab's allegations sufficiently give them a "special interest" in the outcome of the present case; however, this does not provide standing. *Sierra Club v. Morton*, 405 U.S. 727, 738–39, 92 S.Ct. 1361, 1367–68, 31 L.Ed.2d 636 (1972). American–Arab does not allege that its members have been charged with the challenged provisions, that they are members of the PFLP, or that they in fact wish to become members of the PFLP. The allegation that American–Arab and its members receive two publications which the government believes espouse the views of the PFLP does not prove that American–Arab members are subject to or will be subject to deportation under the challenged provisions. *See Younger*, 401 U.S. at 40–42, 91 S.Ct. at 748–50; *Hardwick v. Bowers*, 760 F.2d 1202, 1206 (11th Cir.1985) (heterosexual couple claiming that the state's anti-sodomy law "chilled" aspects of their private life lacked standing because they failed to show membership in a group likely to be prosecuted), *rev'd on merits*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); *cf. United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688–689, 93 S.Ct. 2405, 2416,

37 L.Ed.2d 254 (1973) ("A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action").

We reverse the district court's finding that American Arab has standing.[5]

## II. *Justiciability—Ripeness*

Although the individual appellees do have "standing", it is our conclusion that their first amendment challenges are not ripe for review. Therefore, we vacate the district court's conclusion in this respect as a basis for its judgment.

Ripeness is "'peculiarly a question of timing'" *Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Board of Oil & Gas Conservation*, 792 F.2d 782, 788 (9th Cir.1986) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320 (1974)). When considering "ripeness," we must determine whether the federal court is "the most appropriate institution to address the [plaintiffs'] claims at this particular time." *Id.* at 787. Ripeness, like other justiciability issues, is "not a legal concept with a fixed content or susceptible of scientific verification." *Poe v. Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961). Our resolution of this issue is, however, guided by two considerations: (1) whether the issues are fit for judicial decision and (2) whether the parties will suffer hardship if we decline to consider the issues. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

This case has come to us upon a sketchy record and with many unknown facts. Given the procedural posture of the case, the facts understandably have not

---

**5.** American Arab also argues that it has standing to sue on its own behalf. It has, however, failed to allege facts sufficient to support this claim.

been well-developed. As a result, we do not know, for example, whether the appellees are actually members of the PFLP or what specific acts the government alleges the appellees to have committed in violation of the challenged provisions. In such situations, the Supreme Court has indicated that we ought not to exercise jurisdiction. *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967) (per curiam). Even in the case of a pre-enforcement challenge such as this, the exercise of jurisdiction without proper factual development is inappropriate. As explained by the Court, "the District Court should not be forced to decide ... constitutional questions in a vacuum." *W.E.B. DuBois Clubs.* "The effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that [the suing parties] were covered by the Act." *Id.; see also Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. at 1515–16 (agency action is not fit for judicial review if the necessary facts have not been sufficiently developed).

Additionally, we lack the benefit of the INS's interpretation of the challenged provisions. For that matter, we are not beneficiaries of even the most tentative position by the INS in that respect. Indeed, no agency or court of which we are aware has ever had an opportunity to interpret these provisions or to establish a policy implementing them. Although the provisions have been codified in various forms since 1918, *see* Act of October 16, 1918, 40 Stat. 1012, the parties have not cited, nor have we found, any case or instance when they have been previously applied or interpreted. *See Socialist Workers Party v. Attorney General*, 642 F.Supp. 1357, 1428–30 (S.D.N.Y.1986) (district court declined to interpret 8 U.S.C. § 1251(a)(6)(D) and denied declarative and injunctive relief where there was no evidence that the INS was considering deportation of aliens under that statute). Prudence thus counsels us to be chary of exercising jurisdiction in this uncharted arena.

The subject guiding principles are of uncertain application and unknown operation,

*see Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588–89, 92 S.Ct. 1716, 1719–20, 32 L.Ed.2d 317 (1972), and we lack the benefit of the INS's own interpretation to which we would wish to give substantial weight. *Miller v. Youakim*, 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979); *cf. West Coast Truck Lines, Inc. v. American Industries, Inc.*, 893 F.2d 229, 233 (9th Cir.1990) (holding that agency's interpretation of the law is final and ripe for review). To exercise jurisdiction, in advance of action by the INS, might well propel us into contravening the "basic rationale" of the ripeness doctrine: the court would become entangled in an abstract disagreement over administrative policy and would interfere before any INS decision was made affecting the parties in any concrete way. *Miller*, 440 U.S. at 148, 99 S.Ct. at 971; *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980) (noting that judicial intervention after an agency has issued a complaint but before it has initiated proceedings "denies the agency an opportunity to correct its own mistakes and to apply its expertise. Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary" (citation omitted)).

Finally, we believe that any hardship suffered by the individual appellees resulting from our decision to delay resolution of their claims does not amount to a justification for us to exercise jurisdiction. The individual appellees are not now charged under the challenged provisions. Moreover, if charged and found deportable for violation of the challenged provisions, the individual appellees will have the opportunity to present their constitutional challenges to a court. *See Chadha v. INS*, 634 F.2d 408 (9th Cir.1980), *aff'd*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). We therefore do not have a case in which "delayed resolution of these issues would foreclose any relief from the present injury suffered by appellees." *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d

595 (1978). Contrariwise, adequate procedures exist for the vindication of the individual appellees' claims. To exercise jurisdiction at this stage would thus be premature. *See W.E.B. DuBois Clubs,* 389 U.S. at 312, 88 S.Ct. at 452; *see also Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1019–20, 104 S.Ct. 2862, 2881–82, 81 L.Ed.2d 815 (1984).

In the absence of factual context upon which to rely in formulating a decision, the benefit of the INS's interpretation of the statute, its position with respect to the challenged provisions, or sufficient hardship to the individual appellees resulting from a refusal to exercise jurisdiction, we conclude that the issues here are simply not ripe for review. Thus, we find the "[p]roblems of prematurity and abstractness ... present 'insuperable obstacles' to the exercise of ... jurisdiction, even though that jurisdiction is technically present." *Gilligan,* 406 U.S. at 588, 92 S.Ct. at 1719 (quoting *Rescue Army v. Municipal Court,* 331 U.S. 549, 574, 67 S.Ct. 1409, 1422, 91 L.Ed. 1666 (1947)).

Nor is it proper to exercise jurisdiction over appellees' facial attacks on the challenged provisions. It is true that an established factual record and existing agency interpretation are not necessarily required before we will entertain a facial challenge. *See City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 770 n. 11, 108 S.Ct. 2138, 2151 n. 11, 100 L.Ed.2d 771 (1988). But, given the circumstances of this case, the challenged provisions present only "harmless, empty shadows." *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961). The provisions at issue here have been supplanted by the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (codified as amended at 8 U.S.C. § 1251). Moreover, none of the individual appellees is currently charged, and the United States has expressly disavowed any intention of filing future charges against the appellees under the challenged provisions. The challenged provisions, which have gone unenforced for so many years, and which present no substantial threat of being enforced in the future, do not give rise to a controversy ripe for decision.

## CONCLUSION

The district court's determination that the individual appellees have standing is AFFIRMED. The district court's determination that American–Arab has standing is REVERSED. Regardless of standing, we hold that the trial court improvidently exercised jurisdiction because the issues presented simply were not ripe for review. Accordingly, we VACATE the judgment and REMAND to the district court for proceedings consistent with this opinion. Parties will bear their own costs.

AFFIRMED IN PART, REVERSED IN PART, VACATED, and REMANDED.