# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN R. PREMINGER; SANTA
CLARA COUNTY DEMOCRATIC
CENTRAL COMMITTEE,
                    *Plaintiffs-Appellants,*

                    v.

JAMES B. PEAKE, as Secretary of
Veterans Affairs and in his
personal capacity; ELIZABETH
FREEMAN, as Director of the Palo
Alto Health Care System and in
her personal capacity; HELEN
GIRTON; SACHA POULENZ; MYREL
WILLEFORD,
                    *Defendants-Appellees.*

No. 08-15714

D.C. No.
04-CV-02012-JF

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
June 12, 2008—San Francisco, California

Filed August 8, 2008
Amended December 22, 2008

Before: Michael Daly Hawkins and Susan P. Graber,
Circuit Judges, and James V. Selna,* District Judge.

Opinion by Judge Graber

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

16607

## COUNSEL

Scott Rafferty, Washington, D.C., for the plaintiffs-appellants.

Owen P. Martikan, Assistant United States Attorney, San Francisco, California, for the defendants-appellees.

## ORDER

The opinion filed on August 8, 2008, is amended as follows:

On slip opinion page 10153, line 1, add the following footnote after "was reasonable":

As mentioned above, see note 5, our decision in this case is limited to plaintiffs' efforts to register

voters in Building 331, in which all residents have significant medical needs. We express no opinion on the constitutionality of VA efforts to prevent members of the public from registering voters in other buildings managed by the VA, in which the need for ongoing skilled nursing or medical care may be absent. We also express no opinion on the constitutionality of VA regulations, policies, or directives adopted after the events at issue in this case.

On slip opinion page 10155, at the end of the first full paragraph, add the following footnote: "We express no opinion on the constitutionality of the VA's decision to prevent residents of its facilities from registering fellow patients, as that issue is not before us."

With these amendments, the panel has voted to deny the petition for rehearing. Judges Hawkins and Graber have voted to deny the petition for rehearing en banc, and Judge Selna has so recommended.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on it.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petitions for rehearing or for rehearing en banc may be filed.

---

## OPINION

GRABER, Circuit Judge:

Plaintiffs Steven R. Preminger and the Santa Clara County Democratic Central Committee appeal the district court's dismissal, for lack of standing, of their First Amendment challenge to the Department of Veterans Affairs' ("VA") denial

of entry to one of their facilities for the purpose of registering voters. We now hold that Preminger has standing. Nonetheless, we affirm the judgment in favor of the VA because Plaintiffs failed to demonstrate that the VA's application of 38 C.F.R. § 1.218(a)(14) ("the Regulation") to them violated the First Amendment.

## FACTUAL AND PROCEDURAL HISTORY

The VA's Menlo Park campus provides care for elderly, homeless, disabled, and psychologically impaired veterans. The veterans reside in numerous buildings on the campus, including Building 331, which provides skilled nursing care for up to 150 residents. Many of the residents have severe physical and mental health care needs.

Before his first visit to the campus, lawyer Scott Rafferty contacted VA officials and obtained permission to register veterans to vote. He later visited Building 331 but was denied access to patients. He contacted VA officials again, advising them of the problem he had encountered on his initial visit to Building 331. The Director of the Palo Alto Health Care System, which includes the Menlo Park facility, confirmed in writing that Rafferty had been granted permission to register voters at the Menlo Park campus, provided that his actions not interrupt patient care and that he obtain the permission of the unit's head nurse.

When Rafferty, along with Preminger and another California resident, returned to Building 331 with the intent to register voters, Rafferty was wearing a "John Kerry" button and introduced the group as being affiliated with the Democratic Party when approached by a VA nurse. The nurse told the group that they had to leave and then called the VA police. When a VA police officer stopped the group in the parking lot, Rafferty produced the letter from the Director, authorizing him to register voters on the campus. Upon seeing the letter, the police officer confirmed that they had permission to regis-

ter voters and said that they should not have been denied access to Building 331. But the group did not attempt to return to Building 331 that day. Rafferty later contacted the Director's office. On that occasion, Rafferty learned that the VA had revoked his permission to register voters on the ground that the Regulation[1] precluded "partisan activities" on VA property.

Plaintiffs then filed this action, challenging on First Amendment grounds the VA's refusal to allow them to register voters on the Menlo Park campus.[2] They brought both facial and as-applied challenges to the Regulation and sought a preliminary injunction to prohibit the VA from enforcing the Regulation.

The district court denied Plaintiffs' request for a preliminary injunction and held that it lacked jurisdiction over Plaintiffs' facial challenge to the Regulation because the Federal Circuit had exclusive jurisdiction over that claim. We

---

[1]The Regulation proscribes, in relevant part:

Demonstrations.

(i) All visitors are expected to observe proper standards of decorum and decency while on VA property. Toward this end, any service, ceremony, or demonstration, except as authorized by the head of the facility or designee, is prohibited. . . .

(ii) For the purpose of the prohibition expressed in this paragraph, unauthorized demonstrations or services shall be defined as, but not limited to, . . . partisan activities, i.e., those involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise.

[2]Plaintiffs raised a number of other claims before the district court, which they do not raise on appeal.

In addition, the VA recently issued new guidelines under the Regulation, including Directive 2008-025, which bars all voter registration drives at VA facilities. The Regulation itself remains unchanged. Our opinion is limited to the Regulation as applied to Plaintiffs on the Menlo Park campus in 2004.

affirmed. *Preminger v. Principi (Preminger I)*, 422 F.3d 815, 821, 826 (9th Cir. 2005). Thereafter, Plaintiffs filed their facial challenge in the Federal Circuit, and the Federal Circuit rejected Plaintiffs' facial challenge on the merits. *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1302-03 (Fed. Cir. 2008).

Plaintiffs returned to the Northern District of California. The district court held a three-day bench trial on Plaintiffs' as-applied First Amendment challenge to the Regulation. The court concluded that the VA properly characterized Plaintiffs' voter registration efforts as "partisan activities" within the meaning of the Regulation and that the VA's application of the Regulation was both reasonable and viewpoint neutral. But the district court also concluded that Plaintiffs lacked standing to challenge the Regulation and dismissed the case on that ground. Plaintiffs timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

A. *Plaintiffs have standing.*[3]

**[1]** The "irreducible constitutional minimum of standing" consists of three elements: (1) injury in fact, (2) causation, and (3) likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs bear the burden of establishing standing. *Id.* at 561.

**[2]** An "injury in fact" is "an invasion of a legally protected interest" that is (a) "concrete and particularized"; and (b) "actual or imminent," not "conjectural" or "hypothetical." *Id.* at

---

[3]We review de novo questions of standing. *Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004). But we review for clear error the district court's underlying factual findings. *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1991).

560. "Injury in fact" is particularized if it has affected the plaintiff in a "personal and individualized way." *Id.* at 561 n.1. The injury may be minimal. *See Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008) (holding that " 'an identifiable trifle' " is sufficient to establish standing (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)).

In an as-applied First Amendment challenge, the plaintiff must identify some personal harm resulting from application of the challenged statute or regulation. *See, e.g.*, *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) ("An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."). However, the question whether that harm constitutes "injury in fact" is entirely distinct from the question whether that harm amounts to a violation of the First Amendment. The standing analysis focuses on the *plaintiff* and on whether harm to the plaintiff is sufficient to give him or her the "requisite personal interest" in a case. *See Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (discussing the "requisite personal interest" required for a plaintiff to have standing); *see also Vasquez v. L.A. County*, 487 F.3d 1246, 1250 (9th Cir.) (stating that the purpose of the "injury in fact" prong is to ensure that "there is an advocate with a sufficient personal concern to effectively litigate the matter" (internal quotation marks omitted)), *cert. denied*, 128 S. Ct. 711 (2007). By contrast, the focus of the First Amendment analysis is on the *government's* conduct, specifically, its rationale for imposing the identified harm on the plaintiff. *See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983) (identifying the varying restrictions placed on government regulation of expressive activity, depending on the forum). Precisely because the test and the proof differ in those two analyses, we often have held that a party had standing to bring an as-applied First Amendment claim, yet failed to establish

that the government's conduct violated the First Amendment. *See, e.g.*, *Jacobs*, 526 F.3d at 426, 441-42 (finding standing, but holding that a school's uniform policy did not violate the First Amendment).[4]

[3] Here, we have no trouble concluding that Preminger has direct standing to bring an as-applied First Amendment challenge to the Regulation. When the group asked to register veterans on the Menlo Park campus, the VA turned back Preminger personally. The harm to Preminger therefore was actual, concrete, and particularized. In addition, the VA caused the harm to Preminger by barring him from registering voters, and a favorable decision could redress the harm by altering the VA's registration policy. Because we conclude that Preminger has direct standing to bring an as-applied challenge, we need not and do not consider whether the Santa Clara County Democratic Central Committee has standing and whether either Plaintiff has associational or third-party standing. *See Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with

---

[4]*Monterey County Democratic Central Committee v. United States Postal Service*, 812 F.2d 1194 (9th Cir. 1987), reviewed an as-applied challenge to a regulation very similar to the one at issue here. In *Monterey County*, the Postal Service had promulgated a regulation that allowed only government agencies and nonprofit civic groups to register voters, but barred political parties from doing so. *Id.* at 1195. The local postmaster had denied the Committee's request to register voters at the post office, finding that the Committee was a partisan group that was not authorized to conduct voter registration under the regulation. *Id.* Like Plaintiffs here, the Committee challenged the regulation on the ground that it violated its First Amendment right of free expression. *Id.* 1195-96. We held that the Postal Service had not violated the Committee's First Amendment right because the Committee was unable to prove that the Postal Service had applied the regulation in a discriminatory manner. *Id.* at 1198-99. In so holding, we did not question the Committee's standing to bring its as-applied challenge. We did not require that the Committee prove, *for standing purposes*, that its First Amendment rights were infringed by the way in which the Postal Service had enforced the Regulation at issue. Indeed, had we required the Committee to provide such proof to establish standing, we would have dismissed the case on standing grounds.

multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

B.   *The VA's application of the Regulation did not violate the First Amendment.*

**[4]** Plaintiffs contend that the VA's denial of their request to register voters in Building 331 violates their First Amendment right to free expression.[5] The VA justified its exclusion of Plaintiffs from Building 331 under 38 C.F.R. § 1.218(a)(14). The Regulation prohibits certain expressive activities on VA grounds, including "partisan activities." That term encompasses activities "involving commentary or actions in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association, or enterprise."[6] 38 C.F.R. § 1.218(a)(14)(ii). The VA argues that this restriction on activities on VA property is reasonable in light of the VA's mission and that Plaintiffs were excluded from Building 331 for viewpoint-neutral reasons.

Had the district court dismissed this action before trial, we likely would have remanded the case to permit the district court to consider the merits of Plaintiffs' First Amendment claim in the first instance. But the court held a three-day bench trial on the claim before dismissing the action for lack

---

[5]Plaintiffs alleged that they sought access to the Menlo Park campus at large. Although Plaintiffs challenge the district court's decision to limit the trial to Plaintiffs' efforts to register voters at Building 331, we see no error in that decision. *See infra* Part C. We thus limit our analysis to events at Building 331.

[6]On appeal, Plaintiffs seem to suggest that the VA's ban on voter registration by political parties exceeds the scope of the Regulation. But they have not clearly and separately briefed this issue and it is, therefore, abandoned. *See Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) (holding that issues raised in an appellate brief but not supported by argument are deemed abandoned).

of standing. Consequently, there is a fully developed record for us to review. Moreover, although the district court dismissed the case for lack of standing, the court also issued Findings of Fact and Conclusions of Law that address the merits of Plaintiffs' First Amendment claim. Thus, we reach the merits and hold that Plaintiffs failed to demonstrate that the VA's application of the Regulation to them violated the First Amendment.[7]

### 1. *Building 331 is a nonpublic forum.*

**[5]** The parties do not dispute that voter registration is speech protected by the First Amendment. But the privileges afforded by the First Amendment are not absolute. *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). The extent to which the government may restrict access to a forum depends on the nature of the forum chosen by the speaker. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985); *Perry Educ. Ass'n*, 460 U.S. at 45-46.

**[6]** Fora are grouped into three categories. Public fora are places such as streets and parks that traditionally have been devoted to expressive activity; content-based restrictions in public fora are justified only if they serve a compelling state interest that is narrowly tailored to the desired end. *Perry Educ. Ass'n*, 460 U.S. at 45. Designated public fora are areas that the government affirmatively has opened to expressive

---

[7]We review de novo the constitutionality of a federal regulation. *Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999). We likewise review de novo a district court's conclusions of law. *Int'l Bhd. of Teamsters v. N. Am. Airlines*, 518 F.3d 1052, 1055 (9th Cir. 2008). We review for clear error the district court's findings of fact. *Id.* We may affirm a district court's judgment on any ground supported by the record, even one on which the district court did not rely. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1019 (9th Cir. 2007).

activity; exclusion from designated public fora also must serve a compelling state interest and be narrowly tailored to that interest. *Id.* at 45-46. Nonpublic fora are areas that do not, by tradition or designation, serve as a forum for public communication; content-based restrictions in nonpublic fora need only be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46.

[7] In our earlier decision in this case, we held that Building 331 is a nonpublic forum, *Preminger I*, 422 F.3d at 824, and that holding remains the law of the case. *See Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (stating that decisions at the preliminary injunction phase generally do not constitute the law of the case, but that conclusions of law made in that context are binding). We also note that the Federal Circuit reached the same conclusion in deciding Plaintiffs' facial challenge to the Regulation, holding that "VA Medical Centers, exemplified by the Menlo Park Medical Center, constitute nonpublic fora." *Preminger*, 517 F.3d at 1313. That being so, the VA's exclusion of Plaintiffs from Building 331 did not violate the First Amendment if it was (1) "reasonable in light of the purpose served by the forum," and (2) "viewpoint neutral." *Cornelius*, 473 U.S. at 806.

## 2. *The VA's application of the Regulation was reasonable.*

[8] A restriction on expressive conduct in a nonpublic forum must be reasonable "in the light of the purpose of the forum and all the surrounding circumstances." *Id.* at 809. The government must proffer more than a rational basis for the restriction; the restriction must reasonably fulfill "a legitimate need." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 967 (9th Cir. 2002). But the restriction need not constitute the least restrictive alternative available. *Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991).

The district court found that the primary mission of the VA's Menlo Park facility is to provide veterans with needed health care. The Federal Circuit, in deciding Plaintiffs' facial challenge, agreed. *See Preminger*, 517 F.3d at 1314 ("The mission of the VA is to provide health care and services for veterans and their families."). Building 331 is a skilled nursing facility, all of whose residents have significant health care needs, including both severe mental and physical disabilities, that require ongoing medical management. The district court also found that an essential aspect of the VA's ability to provide quality patient care is the extent to which patients trust their caregivers. Preminger does not challenge these findings, and the record fully supports them.

**[9]** The VA offered two reasons for excluding Plaintiffs from Building 331: (1) a concern that permitting one political party to register voters would require the VA to permit all other political parties to do so, which would disrupt and interfere with patient care; and (2) a desire to prevent the appearance of partisan affiliation, which would undermine patient trust and therefore would compromise patient care. The district court ruled that the VA's concern that voter registration drives could compromise its ability to provide health care services to veterans was a reasonable rationale for denying Plaintiffs' permission to register voters in Building 331. We agree.

**[10]** In a nonpublic forum, "[t]he First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." *Cornelius*, 473 U.S. at 811. The residents of Building 331 have significant health care needs and require complex care. The VA reasonably concluded that allowing one political party access to the Menlo Park campus would invite requests from other political parties to do the same and that supervising numerous voter registration campaigns would be difficult and time-consuming, diverting resources vital to the residents' treatment. In light of the facility's mission to provide skilled nursing care to its patients, the

VA's decision to exclude Plaintiffs was reasonable.[8] *See Cornelius*, 473 U.S. at 809-11 (concluding that excluding legal defense and political advocacy groups from a federal employees' charity drive was reasonable in light of the drive's mission and the government's interest in avoiding controversy that could jeopardize the success of the charity drive).

**[11]** In addition, in a nonpublic forum, the government may restrict expressive activity so as to avoid the perception of favoring one political group over another. *Id.* at 809 ("[A]voiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum."). The VA reasonably concluded that allowing individuals associated with the Democratic Party to register voters on its campus would give the appearance of favoring the Democratic Party over other parties. Thus, the VA's decision to exclude Plaintiffs in order to avoid violating the trust of its patients was reasonable. *See Monterey County*, 812 F.2d at 1199 ("The Postal Service reasonably could conclude that its freedom from the appearance of involvement in the political process is critical to its ability to carry out its charge.").

3. *The VA's application of the Regulation was viewpoint neutral.*

At the time of the events at issue here, the VA allowed the League of Women Voters to register voters on VA property. Plaintiffs contend that the League engages in partisan activity by seeking to register voters and by taking positions on public policy issues and, therefore, that the VA's exclusion of Plain-

---

[8]As mentioned above, see note 5, our decision in this case is limited to plaintiffs' efforts to register voters in Building 331, in which all residents have significant medical needs. We express no opinion on the constitutionality of VA efforts to prevent members of the public from registering voters in other buildings managed by the VA, in which the need for ongoing skilled nursing or medical care may be absent. We also express no opinion on the constitutionality of VA regulations, policies, or directives adopted after the events at issue in this case.

tiffs' must have been motivated by the VA's desire to suppress the Democratic Party's point of view. Plaintiffs also contend that the VA has permitted individuals associated with the Republican Party to register voters at the Menlo Park facility. The VA counters that it never has knowingly permitted individuals associated with a political party to register voters on the Menlo Park campus.

**[12]** A restriction on expressive conduct in a nonpublic forum must be viewpoint neutral. *Cornelius*, 473 U.S. at 811 ("The existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination."). But in a nonpublic forum, the government has "the right to make distinctions in access on the basis of subject matter and speaker identity," *Perry Educ. Ass'n*, 460 U.S. at 49, as long as the distinctions are not "an effort to suppress expression merely because public officials oppose the speaker's view," *id.* at 46.

**[13]** In *Monterey County*, 812 F.2d at 1198-99, we held that a restriction banning political parties from registering voters in a nonpublic forum was viewpoint neutral. We reasoned that, "[b]y excluding all partisan groups from engaging in voter registration—conduct permitted by non-partisan groups—the [government] [wa]s not granting to one side of a debatable public question a monopoly in expressing its views." *Id.* (internal quotation marks and ellipsis omitted). Here, Preminger testified at trial that he went to Building 331 to register voters as an individual, not as an official representative of the Democratic Party. But the VA nurse who encountered Preminger and Rafferty testified that Rafferty was wearing a Kerry button and that he introduced Preminger to her as being affiliated with the local Democratic Party. The VA therefore reasonably concluded that Preminger and Rafferty were affiliated with a political party and that their voter registration campaign was a partisan political activity. The key question,

therefore, is whether the VA excluded Plaintiffs because of opposition to their views.

The two individuals who initially granted Rafferty permission to register voters testified at trial that Rafferty denied being associated with a political party. They testified that, had they known that he was associated with *any* political party, they never would have granted him permission in the first place. In addition, the nurse who denied Preminger and Rafferty access to Building 331 testified that she asked them to leave not because of any particular opinion of the Democratic Party, but because she believed that the appearance of political neutrality was critical to patient care.

All of the VA personnel who appeared at trial testified that neither they nor the VA itself ever had knowingly authorized any political party to conduct voter registration at the Menlo Park campus. The VA conceded that, in 2004, an individual in another residential unit on the Menlo Park campus registered two fellow patients as Republicans. But the patient did so without the VA's knowledge or consent; indeed, when the patient later sought permission to register other patients, the VA denied the request because it represented partisan activity and was both against VA policy and clinically unwise.[9]

In addition, the district court did not clearly err in finding that the VA did not knowingly permit "Republican operatives" to register patients inside Building 347, a closed residential unit on the Menlo Park campus. Plaintiffs presented evidence that several patients in Building 347 registered to vote as Republican during September and October of 2004. But this evidence fails to demonstrate who registered the patients or that the VA was aware of any registration efforts.

---

[9]We express no opinion on the constitutionality of the VA's decision to prevent residents of its facilities from registering fellow patients, as that issue is not before us.

**[14]** Finally, the VA's decision to allow the League of Women Voters to register voters was a permissible access distinction on the basis of speaker identity. By Plaintiffs' own admission, the purpose of the Santa Clara County Democratic Central Committee is to promote the election of Democratic Party candidates, to register Democratic voters, and to educate and inform voters in ways that assist the Democratic Party. The League, by contrast, is nonpartisan. Although it seeks to influence public policy through education and advocacy, the League neither endorses nor opposes candidates—including partisan candidates—for office at any level of government. Thus, permitting only the League to register voters comported with the VA's interests of limiting non-healthcare related activities in VA residential units and of maintaining an appearance of partisan neutrality. As previously discussed, the VA reasonably concluded that permitting Plaintiffs to register voters would have advanced neither interest.

C. *The district court did not abuse its discretion in limiting discovery and the scope of the trial.*

Plaintiffs challenge the district court's decisions to close discovery in January 2006, more than one year in advance of trial, and to limit the scope of the trial to claims arising from Plaintiffs' efforts to register voters in Building 331. We find no abuse of discretion.[10]

**[15]** Contrary to Plaintiffs' assertion, the district court's January 2006 order did not close discovery definitively. Instead, the order invited Plaintiffs to request additional discovery if they believed that discovery was necessary to oppose a future motion for summary judgment. There is nothing in the record or in Plaintiffs' opening brief to suggest that they ever did so.

---

[10]We review for abuse of discretion a district court's decisions concerning discovery, *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1009 (9th Cir. 2004), and trial supervision, *Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000).

**[16]** In addition, at a pretrial hearing in March 2007, the district court offered Plaintiffs the option of reopening discovery and expanding the scope of the trial beyond Building 331 or of proceeding immediately on their claims concerning Building 331 only. Plaintiffs chose to proceed to a trial limited to Building 331. The district court did not abuse its discretion in allowing Plaintiffs to make that choice.

D.  *The district court has not abused it discretion by failing to decide Plaintiffs' motion for sanctions.*

Plaintiffs challenge the district court's failure, to date, to decide their November 2005 motion for sanctions against VA counsel Owen Martikan. Plaintiffs allege that Martikan acted in bad faith in presenting evidence about Rafferty that he knew to be false and in failing to correct the record when requested to do so. Again, we find no abuse of discretion.[11]

**[17]** Initially, the district court denied the motion for sanctions conditionally, finding that disputed issues of material fact required a trial. The court then postponed the trial at Plaintiffs' request so that they could pursue their facial challenge to the Regulation in the Federal Circuit.

**[18]** After the Federal Circuit ruled, this case revived. The district court offered to make an express finding that, based on the record, no evidence supported the VA's allegations about Rafferty. Plaintiffs rejected that offer. Instead, at trial, they asked the district court again to postpone deciding the motion, because they would withdraw it if they prevailed on their as-applied challenge. The court did not issue its Memorandum of Intended Decision, indicating an intent to enter judgment for the VA and inviting Plaintiffs to indicate whether they still wished to proceed with the motion, until

---

[11]We review for abuse of discretion a district court's decisions concerning its management of litigation. *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1212 (9th Cir. 2004).

January 28, 2008, to which Plaintiffs responded on February 5, 2008. The delay of the ensuing five months does not constitute an abuse of discretion by the district court. *See Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (stating the well-established principle that "district courts have inherent power to control their dockets" (internal quotation marks and alteration omitted)).

## CONCLUSION

Plaintiffs had standing to bring their as-applied challenge, but the VA's application of the Regulation to them did not violate the First Amendment.

AFFIRMED.