OPINION
M. SMITH, Circuit Judge:
Defendant-Appellant William J. Szabo appeals from his judgment of conviction under Title 38, Code of Federal Regulations, Section 1.218(a)(5), arguing that the regulation violates the First and Fifth Amendments, both facially and as applied to his conduct. With regard to Szabo’s as-applied challenges, we affirm the judgment of the district court. We dismiss Szabo’s facial challenge for lack of jurisdiction.
FACTUAL AND PROCEDURAL BACKGROUND
Szabo is a veteran who qualifies to receive services at Veterans Affairs (VA) facilities. Prior to August 29, 2011, Szabo was a patient at the Sacramento VA Medical Center outpatient mental health clinic (the VA Hospital). As a result of his prior behavioral problems at the VA Hospital, Szabo was required to have a police escort when he visited the facility, and he was only permitted to be treated by one particular physician.
On August 29, 2011, Szabo arrived at the VA Hospital and asked to see his doctor. He was accompanied only by his brother. A receptionist, who was familiar with Sza-bo, asked if Szabo had checked in with the VA police, and informed Szabo that he did not have an appointment.[1] In response, Szabo became angry, clenched his fists, and yelled “I don’t need [the] fuckin’ VA police. I don’t need nobody to show me around. I’ve — I just want to see my doctor.” When the receptionist told Szabo that his doctor was not in, Szabo yelled “I don’t need to see his pussy ass anyway, just you know, give me another fuckin’ doctor.” Szabo proceeded to call the receptionist “a cocksucker [ ], a motherfucker, and a faggot ass son of a bitch.” His yelling was so loud that it caused patients to move into the hallway and was audible on other floors. VA security was dispatched to respond.
As the receptionist waited for security to arrive, Szabo threatened that he would “kick [the receptionist’s] ass, [his] pussy ass, [his] fucking pussy ass ... and [the Dr.’s] pussy ass.” While making these threats, Szabo was “flailing his arms, [] leaning ... over the counterf,] yelling in the face of ... the receptionist[ ].... slammfing] [a stack of papers] to the counter, and ... slamming his hands [on the counter].” The receptionist feared for his safety and the other patients’ safety, and when the security officer arrived, the receptionist left the reception area.
The security officer attempted to calm Szabo and to persuade Szabo to go outside. In response Szabo yelled “[a]t the top of his lungs”: “[F]uck you, you queer ass, faggot ass, motherfucker, I’ll kick your ass.” A number of patients left the area. The security officer asked Szabo to calm down two or three additional times, and Szabo’s brother attempted to “coax him out[side.]” When these efforts were unsuccessful, the security officer called the police.
While the security officer was contacting the police, Szabo started to walk outside. The police arrived about two minutes later and requested several times that Szabo sit on the curb while the security officer ex *1001 plained the situation to them. Szabo did not comply with the officers’ instructions and continued to yell obscenities. When Szabo pushed one of the officers, a struggle ensued. Szabo was ultimately sprayed with pepper spray and placed in handcuffs.
Following a bench trial, Szabo was convicted of one count of disorderly conduct, in violation of Title 38, Code of Federal Regulations, Section 1.218(a)(5), which prohibits causing “disturbances” at VA facilities. Pursuant to the regulation, “disturbances” are defined as:
Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly
38 C.F.R. § 1.218(a)(5). Szabo was sentenced to three years of supervised release, fifty hours of community service, and a ten dollar special assessment. He timely appealed.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction to review the judgment of the district court under 28 U.S.C. § 1291. We review questions of law de novo. United States v. Thoms, 684 F.3d 893, 898 (9th Cir.2012). “The existence of subject matter jurisdiction is a question of law that we review de novo.” Hamad v. Gates, 732 F.3d 990, 995 (9th Cir.2013).
DISCUSSION
Szabo argues that 38 C.F.R. § 1.218(a)(5) violates the First Amendment and the Fifth Amendment both facially and as applied to his conduct.[2] We reject Szabo’s as-applied challenges, and we lack jurisdiction to consider his facial challenge.
I. As-Applied Challenges
Szabo argues that 38 C.F.R. § 1.218(a)(5) is unconstitutional as applied to him, because (1) the conduct for which he was convicted constitutes protected First Amendment speech; and (2) 38 C.F.R. § 1.218(a)(5) is vague in violation of the Due Process Clause of the Fifth Amendment. We reject both arguments.
A. Protected Speech
1. Legal Standard
The right to speak is not unlimited, and the degree of scrutiny that we apply to *1002 challenged speech “varies depending on the circumstances and the type of speech at issue.” In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir.2011). Speech that threatens a person with violence is not protected by the First Amendment. Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1072 (9th Cir.2002) (“[W]hile advocating violence is protected, threatening a person with violence is not.”); see also Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). “Threats, in whatever forum, may be ... proscribed without implicating the First Amendment.” Planned Parenthood, 290 F.3d at 1076, n. 11 (collecting cases).
Where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum. Preminger v. Principi, 422 F.3d 815, 823 (9th Cir.2005) (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). VA medical facilities are “non-public” fora, Preminger v. Peake, 552 F.3d 757, 765 (9th Cir.2008), and the government’s power to regulate speech “is at its greatest when regulating speech in a non-public forum,” Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir.2011) (citing Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 44-46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). For this reason, restrictions on speech in VA medical facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral. United States v. Kokinda, 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990); Peake, 552 F.3d at 765.
 In the context of restrictions on speech, reasonableness concerns “the purpose of the forum and all the surrounding circumstances.” Peake, 552 F.3d at 765. While there must be more than “a rational basis” for a restriction on speech, the restriction “need not constitute the least restrictive alternative available.” Id. at 766. We have recognized that patients at VA medical facilities “have significant health care needs,” which justify the government’s prohibiting conduct that diverts attention and resources from patient care. Id. “In a nonpublic forum, the First Amendment does not forbid ... exclusion of speakers who would disrupt [the forum] and hinder its effectiveness for its intended purpose.” Id. (internal quotations and alterations omitted).
Even reasonable restrictions on speech must be applied for “viewpoint-neutral reasons.” Principi, 422 F.3d at 825. “[I]n a nonpublic forum, the government has ‘the right to make distinctions in access on the basis of subject matter and speaker identity,’ as long as the distinctions are not ‘an effort to suppress expression merely because public officials oppose the speaker’s view.’ ” Peake, 552 F.3d at 767 (quoting Perry Educ. Ass’n, 460 U.S. at 46, 49, 103 S.Ct. 948).
2. Application
The conduct for which Szabo was convicted does not constitute protected speech, because his conduct involved a “true threat” of violence. Planned Parenthood, 290 F.3d at 1072 (citing Watts, 394 U.S. at 707, 89 S.Ct. 1399). Szabo threatened to “kick [the] pussy ass” of the receptionist, his doctor, and a VA security guard. While making this threat, he was yelling at the top of his lungs, “flailing his arms, [ ] leaning ... over the counter[,] yelling in the face of ... the receptionist ].... slamm[ing] [a stack of papers] to the counter, and ... slamming his hands.” Szabo’s actions put VA employees and other patients in fear for their safety, and the *1003 First Amendment does not protect such conduct.
However, even if Szabo’s conduct did constitute protected speech, 38 C.F.R. § 1.218(a)(5) would not be unconstitutional as applied to his conduct. It is undisputed that 38 C.F.R. § 1.218(a)(5) is a viewpoint neutral regulation. Accordingly, the only pertinent question is whether its application to Szabo’s conduct is “reasonable in light of the purpose served by the [VA hospital].” Peake, 552 F.3d at 765.
The government asserts that it seeks to prohibit disturbances such as Szabo’s, because (1) the purpose of VA facilities is to serve and care for veterans, (2) many veterans have heightened sensitivities, and (3) disturbances, including loud noises, can trigger psychological reactions from the VA patient population. The government’s interest in caring for veteran patients and not triggering adverse psychological reactions from such patients is plainly a legitimate government interest. Accordingly, prohibiting a visitor from yelling obscenities and threatening physical violence is eminently reasonable in view of this goal.
B. Vagueness
1. Legal Standard
A statute or regulation is im-permissibly vague under the Due Process Clause of the Fifth Amendment if it “fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” Holder v. Humanitarian Law Project, 561 U.S. 1, 18, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (quoting United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)). “We consider whether a statute is vague as applied to the particular facts at issue, for ‘[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.’ ” Humanitarian Law Project, 561 U.S. at 18-19, 130 S.Ct. 2705 (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). So long as the challenged terms “are clear in their application to [the defendant’s] conduct ... [his] vagueness challenge must fail.” Humanitarian Law Project, 561 U.S. at 21, 130 S.Ct. 2705.
2. Application
As discussed above, Szabo threatened to harm the receptionist, his doctor, and a VA security guard using violent and profane language. In so doing, he yelled at the top of his lungs and engaged in threatening behavior. These actions put patients and employees in fear for their safety, and caused them to leave the reception area.
Szabo’s actions unambiguously fall within 38 C.F.R. § 1.218(a)(5)’s prohibition on “loud” and “abusive” language and on “conduct ... which creates loud or unusual noise.” Accordingly, the regulation is not unconstitutionally vague with regard to Szabo’s conduct. For these reasons, Sza-bo’s as-applied challenges to the regulation fail.
II. Facial Challenge
Szabo further argues that we should invalidate 38 C.F.R. § 1.218(a)(5) because it is facially overbroad. In making this argument, Szabo does not assert that his own conduct was constitutionally protected. Rather, he argues that we should set aside the regulation because at some point in the future it might reach others’ constitutionally protected conduct. We dismiss this challenge for lack of jurisdiction.
A. Legal Standard
1. Overbreadth
A constitutional challenge based on overbreadth is a challenge to the facial *1004 validity of a statute or regulation. While an overbreadth challenge may be brought where a statute is constitutional as applied to the individual challenging it, such challenges are exceptions to the ordinary standing requirements, and are not “casually employed.” L.A. Police Dep’t v. United Reporting Publ’g Corp., 528 U.S. 32, 38-40, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999).
“Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, [the Supreme Court] ha[s] recognized that the overbreadth doctrine is ‘strong medicine’ and ha[s] employed it with hesitation, and then ‘only as a last resort.’ ” Id. (citations omitted). “[Particularly where conduct and not merely speech is involved,” a statute will not be invalidated as unconstitutionally overbroad unless it “reaches a substantial number of impermissible applications.” New York v. Ferber, 458 U.S. 747, 770-71, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
2. Jurisdiction
Although federal courts generally have jurisdiction to consider facial challenges to agency regulations, 5 U.S.C. § 702, we lack jurisdiction to consider the facial validity of a VA regulation that is constitutional as applied to the individual challenging it.
Chapter 7 of the Administrative Procedure Act (APA) provides that “[t]he form of proceeding for judicial review [of agency action] is the special statutory review proceeding relevant to the subject matter in a court specified by statute.” 5 U.S.C. § 703 (emphasis added). “[So long as] Congress provides for a ‘special statutory review proceeding’ in one specific court, challenges to the administrative action must take place in the designated forum.” Principi, 422 F.3d at 821 (quoting 5 U.S.C. § 703). For this reason, the facial validity of a regulation may only be raised outside of the designated forum when that forum is somehow inadequate. See 5 U.S.C. § 703; see also F.C.C. v. ITT World Commc’ns, Inc., 466 U.S. 463, 468-69, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984).
38 U.S.C. § 502 mandates that challenges to the facial validity of VA regulations must take place in the United States Court of Appeals for the Federal Circuit. Principi, 422 F.3d at 821; Chinnock v. Tumage, 995 F.2d 889, 893 (9th Cir.1993); Preminger v. Sec’y of Veterans Affairs, 517 F.3d 1299, 1305 (Fed.Cir.2008). The statute provides:
An action of the [VA] Secretary to which section 552(a)(1) [of the APA] ... refers ... is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit.
38 U.S.C. § 502 (emphasis added).[3]
Prior to 1988, veterans were precluded from obtaining any judicial review of decisions made by the VA. To remedy this perceived problem, Congress passed the Veterans’ Judicial Review Act, Pub.L. 100-687, 102 Stat. 4105 (1988), which authorizes judicial review of VA decisions and centralizes such review in the Federal Circuit. According to the House Committee Report, the Federal Circuit was given exclusive jurisdiction over VA actions to ensure national uniformity in the status of those *1005 regulations and to allow a single court to develop subject matter expertise. H.R.Rep. No. 100-963, at 28 (1988) (expressing Congress’s intent “to avoid the possible disruption of VA benefit administration which could arise from conflicting opinions on the same subject due to the availability of review in the 12 Federal Circuits or the 94 Federal Districts” and stating that “the subject of veteran benefits rules and policies is one that is well suited to a court which has been vested with other types of specialized jurisdiction”).
Because 38 U.S.C. § 502 plainly states that facial challenges to the validity of VA regulations may be brought only in the Federal Circuit, we do not have jurisdiction to consider the facial validity of 38 C.F.R. § 1.218(a)(5).
3. Sufficiency of Review
Our dissenting colleague argues that although 38 U.S.C. § 502 only authorizes the Federal Circuit to consider facial challenges to VA regulations, we should nonetheless consider Szabo’s request to invalidate 38 C.F.R. § 1.218(a)(5) because: (1) 38 U.S.C. § 502 did not provide Szabo with an “adequate” and “prior” opportunity to challenge the regulation, as required by 5 U.S.C. § 703, and (2) 38 U.S.C. § 502’s jurisdictional mandate violates Szabo’s right to due process. We disagree.
a. “Adequate” and “Prior” Review
The Federal Circuit provides an adequate forum for judicial review of agency action. It is axiomatic that Congress may prescribe the jurisdiction of inferior federal courts and, if it so chooses, vest jurisdiction in a single court. U.S. Const, art. iii, § 1, cl. 1; Yakus v. United States, 321 U.S. 414, 429, 64 S.Ct. 660, 88 L.Ed. 834 (1944). “There is no constitutional requirement that [a challenge] be made in one tribunal rather than in another, so long as there is an opportunity to be heard and for judicial review which satisfies the demands of due process.” Yakus, 321 U.S. at 444, 64 S.Ct. 660.
Szabo seeks review of the facial constitutionality of 38 C.F.R. § 1.218(a)(5). In accordance with the APA, the Federal Circuit will “hold unlawful and set aside [VA regulations] that [are] ‘contrary to constitutional right, power, privilege, or immunity.’ ” Preminger, 517 F.3d at 1305 (quoting 5 U.S.C. § 706(2)(B)). Neither Szabo nor the dissent advance any reason why the Federal Circuit is not an adequate forum to litigate this challenge, and we are unable to discern any such inadequacy. See Pub. Util. Comm’r of Or. v. Bonneville Power Admin., 767 F.2d 622, 627 (9th Cir.1985).
Nonetheless, the dissent reads 5 U.S.C. § 703 and 38 U.S.C. § 502 as vesting exclusive jurisdiction in the Federal Circuit only if Szabo had an opportunity to challenge 38 C.F.R. § 1.218(a)(5)’s facial validity prior to his conviction. To the extent that 5 U.S.C. § 703 imposes such a requirement, it is also satisfied here.
Our dissenting colleague seems to agree that 38 U.S.C. § 502 generally provides a prior opportunity for review of VA regulations, and that the statute therefore generally deprives us of jurisdiction to consider facial challenges to VA regulations. Nonetheless, according to the dissent, Szabo did not have a prior opportunity to challenge 38 C.F.R. § 1.218(a)(5) because one in Sza-bo’s position would not have challenged the regulation prior to his indictment, and once Szabo was indicted, it would have been burdensome for him to maintain parallel litigations in two different forums. With respect, our colleague is mistaken.
The dissent seems to read 5 U.S.C. § 703 as creating an exception to 38 U.S.C. § 502’s jurisdictional mandate for any criminal defendant who lacked a pri- or plan to violate the VA regulation un *1006 der which he is charged. Our colleague’s construction is entirely unworkable as a practical matter. Under this reading, a federal court’s jurisdiction to consider a criminal defendant’s facial challenge to a VA regulation — that is indisputably valid with regard to his conduct — turns on an individualized analysis of when a criminal defendant formed the requisite intent to commit a regulatory offense.
Moreover, our colleague’s construction of 5 U.S.C. § 703 finds no support in the APA, and it conflicts squarely with Congress’s desire for uniform review of VA regulations. As we discuss above, Congress assigned review of VA regulations to the Federal Circuit in order to ensure national uniformity in the status and enforcement of those regulations. Because Congress prescribed a centralized forum to review the validity of VA regulations, “[i]t is hard to believe that Congress ... would have made the remedy optional and contemplated that the regulation could also be challenged by defiance.” United States v. Zenon-Encarnacion, 387 F.3d 60, 67 (1st Cir.2004) (en banc) (Boudin and Lynch, JJ., concurring). Our dissenting colleague’s position — that the applicability of 38 U.S.C. § 502’s jurisdictional bar turns on when a criminal defendant formed the requisite mens rea to violate a VA regulation — would create an end-run around Congress’s clear intent to vest the Federal Circuit with exclusive jurisdiction to consider the validity of VA regulations, and it would invite the very disruption that Congress sought to prevent. We reject this reading.
The dissent further argues that Szabo did not have an opportunity to challenge 38 C.F.R. § 1.218(a)(5) prior to his conviction because under our recent decision in Protectmarriage.com-Yes on 8 v. Bowen, 752 F.3d 827 (9th Cir.2014), Szabo could not have brought a justiciable pre-enforcement challenge. Again, we respectfully disagree. In Protectmarriage.com, political committees that supported the passage of California’s Proposition 8 sought an exemption from future campaign contribution reporting requirements on the basis that the committees might support future campaigns opposing same sex marriage and that the State’s disclosure requirements might deter potential contributions to such future efforts. Id. On appeal, we held that we lacked jurisdiction over the plaintiffs’ pre-enforcement suit because the plaintiffs failed to articulate a concrete and immediate threat of injury. Id. at 838-41. Unlike the Protectmarriage.com plaintiffs, Szabo could have articulated a well-founded, concrete, and imminent fear that 38 C.F.R. § 1.218(a)(5) would be enforced against him. See Susan B. Anthony List v. Driehaus, — U.S. -, 134 S.Ct. 2334, 2342-46, 189 L.Ed.2d 246 (2014) (holding that a pre-enforcement challenge is ripe where a party can articulate a “credible threat” that a statute will be enforced against him).
Szabo was on notice that 38 C.F.R. § 1.218(a)(5) prohibits the specific type of disruptive conduct that is at issue in this case. Not only is the regulation published, see United States v. Int’l Minerals & Chem. Corp., 402 U.S. 558, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); A & W Smelter & Refiners, Inc. v. Clinton, 146 F.3d 1107, 1111 (9th Cir.1998), but also Szabo had been disciplined for engaging in similar conduct in the past. Szabo has a long history of causing disruptions at the VA hospital. Due to this behavior, Szabo was required to have a police escort when he visited the facility, and he was only permitted to be treated by one particular physician. In light of these previous administrative sanctions, Szabo could have articulated a credible threat that he would be prosecuted if he engaged in similarly disruptive conduct in the future. Susan B. Anthony List, 134 S.Ct. at 2345 (Past en *1007 forcement against specific conduct is “good evidence” that a litigant faces a legitimate threat of future enforcement, and administrative sanctions alone “may give rise to harm sufficient to justify pre-enforcement review.” (citing Ohio Civil Rights Comm’n v. Dayton Christian Schs., Inc., 477 U.S. 619, 625-26, n. 1, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986))).
For these reasons, we find it likely that the Federal Circuit would have entertained a pre-enforcement challenge to 38 C.F.R. § 1.218(a)(5), and the mere fact that Szabo may not have had a strong incentive to bring such a challenge prior to his indictment does not affect our jurisdictional analysis. Moreover, even after Szabo was indicted, he could have challenged 38 C.F.R. § 1.218(a)(5) in a parallel proceeding, and “the inconvenience” of challenging the regulation in an alternate forum would not have outweighed the government’s interest “in having a centralized, unitary scheme of review[ ] ...” Ya-kus, 321 U.S. at 437 n. 5, 64 S.Ct. 660. We therefore reject the dissent’s interpretation of 5 U.S.C. § 703 and hold that 38 U.S.C. § 502 deprives us of jurisdiction to consider Szabo’s request that we invalidate 38 C.F.R. § 1.218(a)(5).
b. Due Process
Finally, we hold that 38 U.S.C. § 502’s jurisdictional bar does not violate Szabo’s right to due process. This conclusion follows directly from Yakus v. United States, in which the Supreme Court explicitly held that a defendant’s due process rights are not violated merely because he must challenge a regulation under which he is charged through a special statutory review procedure. 321 U.S. at 427-44, 64 S.Ct. 660.
In Yakus, the Supreme Court considered a provision of the Emergency Price Control Act of 1942, which required that challenges to the statute’s implementing regulations be brought only in the Emergency Court of Appeals, and then only within sixty days of a regulation’s promulgation. 321 U.S. at 427-28, 64 S.Ct. 660. The defendants in Yakus declined to challenge the validity of a price regulation pursuant to this procedure, but later attempted to challenge the regulation when they were prosecuted for violating it. The Supreme Court held that “the provision of the Act, so construed as to deprive petitioners of opportunity to attack the [regulation in a prosecution for its violation,” did not “deprive them of due process of law,” because an administrative pathway existed that allowed for challenges to the regulation. Id. at 431-33, 64 S.Ct. 660. The Court expressly stated:
[W]e are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity, or which precludes the practice, in many ways desirable, of splitting the trial for violations of an administrative regulation [between] ... the issue of its validity ... and the issue of [its] violation.... Such a requirement presents no novel constitutional issue.
Id. at 444, 64 S.Ct. 660.
In denying the petitioners’ due process challenge, the Yakus Court emphasized that a due process challenge is not appropriate where “[a criminal defendant] failed to seek the administrative remedy and the statutory review which were open to [him] and [does] not show[ ] that had [he] done so ... [he would have been deprived of] judicial remedies adequate to protect [his] rights.” Id. at 434, 64 S.Ct. 660. “Only if we could say in advance of resort to [a] statutory procedure that it is incapable of affording due process ... could we con- *1008 elude that [a criminal defendant has] shown any legal excuse for [his] failure to resort to it or that [his] constitutional rights have been or will be infringed.” Id. at 435, 64 S.Ct. 660.[4]
In light of Yakus, we can divine no reason why review of 38 C.F.R. § 1.218(a)(5) in the Federal Circuit would not provide Szabo with due process of law. “Congress, through its power to define the jurisdiction of inferior federal courts ... [may] give [one court] exclusive equity jurisdiction to determine the validity of [administrative regulations] and foreclose any further or other consideration of the validity of a regulation as a defense to a prosecution for its violation.” Id. at 443, 64 S.Ct. 660. Like the Emergency Court of Appeals, which was at issue in Yakus, the Federal Circuit “has power to review all questions of law ... [including] any question of the denial of due process or any procedural error appropriately raised in the course of the proceedings.” Id. at 437, 64 S.Ct. 660. Any decision by the Federal Circuit is reviewable by the Supreme Court. And the mere inconvenience of challenging the facial validity of 38 C.F.R. § 1.218(a)(5) in an alternate forum does not deprive Szabo of due process of law. Id. at 437 n. 5, 64 S.Ct. 660.
. In concluding that 38 U.S.C. § 502 does not violate Szabo’s right to due process, we emphasize that the Supreme Court did not find a due process violation in Yakus, even though the Emergency Price Control Act precluded a criminal defendant from bringing any challenge to the price control regulations outside of the sixty-day review procedure that was available in the Emergency Court of Appeals. By contrast, we have entertained Szabo’s challenges to the constitutionality of 38 C.F.R. § 1.218(a)(5) as it applies to his conduct, Szabo could have challenged the facial validity of 38 C.F.R. § 1.218(a)(5) at any time in the Federal Circuit, and Szabo retains the right to bring a facial challenge to 38 C.F.R. § 1.218(a)(5) in the Federal Circuit. If at some point in the future Szabo persuades the Federal Circuit that the regulation is unlawful, he is also free to later seek collateral relief from his conviction.
Despite the existence of various avenues through which Szabo could properly challenge the validity of the regulation under which he was charged, Szabo has declined to take advantage of the administrative review procedures that are available to him. Instead, Szabo asks us to create an exception to 38 U.S.C. § 502’s jurisdietion *1009 al bar so that we can consider whether 38 C.F.R. § 1.218(a)(5) is overbroad with regard to hypothetical conduct that is not before us. The Due Process clause does not compel us to grant such exceptional relief, and we hold that we lack jurisdiction to consider Szabo’s request to invalidate the regulation.
CONCLUSION
For these reasons, we affirm the judgment of the district court with regard to Szabo’s as-applied 'challenges, and we dismiss this appeal for lack of jurisdiction with regard to Szabo’s facial challenge.
AFFIRMED IN PART, DISMISSED IN PART.

. There is a dispute as to whether Szabo initially had an appointment that was rescheduled or cancelled.

. Szabo further argues that the district court erred in excluding expert testimony regarding his mental illness, through which he sought to advance a theory that his psychological condition prevented him from fully considering his actions. The district court did not abuse its discretion in excluding this expert testimony. See United States v. Anderson, 741 F.3d 938, 949 (9th Cir.2013) (stating that we review evidentiary rulings for abuse of discretion).
In some cases, evidence of a criminal defendant’s mental health will support a diminished capacity defense. United States v. Twine, 853 F.2d 676, 678 (9th Cir.1988). But diminished capacity defenses are not available to defendants who are accused of general intent crimes. United States v. Vela, 624 F.3d 1148, 1154 (9th Cir.2010). Violations of 38 C.F.R. § 1.218(a)(5) are crimes of general intent. See United States v. Martinez, 49 F.3d 1398, 1401 (9th Cir.1995) (“When a statute does not contain any reference to intent, general intent is ordinarily implied.”). For this reason, expert testimony regarding Szabo’s diminished capacity was not relevant to his defense, and the district court did not err in excluding this testimony.

. Section 552(a)(1) of the APA requires agencies to publish in the Federal Register "rules of procedure ... [and] substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.” There is no dispute that 38 C.F.R. § 1.218(a)(5) is a regulation published in the Federal Register. 50 Fed.Reg. 29, 226 (July 18, 1985).

. Our dissenting colleague highlights that the Yakus Court stated: “We have no occasion to decide whether one charged with criminal violation of a duly promulgated price regulation may defend on the ground that the regulation is unconstitutional on its face.” Id. at 446-47 (emphasis added). To the extent that this language suggests that the Supreme Court might have entertained a facial constitutional challenge to the price regulations (which we do not believe that it does), we note that the statutory review procedure at issue in Yakus only permitted challenges to price regulations within sixty days of the regulation’s promulgation. Under this review procedure, there was no forum in which a defendant could challenge the constitutional validity of a regulation under which he was convicted if he failed to bring a challenge immediately after the regulation was promulgated — a result that arguably raises a difficult constitutional question. But in assessing the statutory review procedure at issue in Yakus, the Court also analyzed several similar review provisions and expressed no reservation with respect to those procedures that were not temporally limited. Id. at 445, 64 S.Ct. 660 (“[T]he denial of [a facial] defense in such a case does not violate any provision of the Constitution.”). Here, Szabo could have challenged the validity of 38 C.F.R. § 1.218(a)(5) in the Federal Circuit at any time prior to his conviction and retains the right to challenge the regulation. He is only limited with regard to the forum in which he must bring such a challenge, and this inconvenience does not amount to a denial of due process. Id. at 437, 437 n. 5, 64 S.Ct. 660.