[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14838
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-00008-MW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MATILDA JEAN RENFRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 6, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Matilda Jean Renfro appeals her petty offense conviction for disorderly

conduct at a Department of Veterans Affairs ("VA") hospital in violation of

38 C.F.R. § 1.218.  After a magistrate judge found Renfro guilty at a bench trial,

the district court upheld her conviction on appeal.  Now, appealing the district

court's decision, Renfro argues that her conviction must be reversed because the

regulation she was charged with violating is unconstitutionally vague and there

was insufficient evidence to support her conviction. After careful review, and for

the reasons set forth below, we affirm the district court's decision.

## I.    BACKGROUND

### A.    Renfro's Arrest

The incident leading to Renfro's arrest occurred when she visited a VA

hospital for medical treatment.  When Renfro arrived at the hospital, she was

required to check in with the dispatcher at the hospital's police services so that she

could be escorted to her appointment.  The dispatcher's station was behind a

bulletproof glass window in the emergency room waiting area.

When Renfro arrived, the waiting area was full of people.  Renfro

approached the dispatcher's desk where William Goff, a volunteer, was working.

Because Goff was sitting behind the glass window, he asked Renfro through an

intercom for her identification and to state where she was going in the hospital.[1]

Although Renfro gave Goff her identification, she refused to tell him where she

was headed.  Renfro told Goff that she did not feel like she needed to give that

---

[1] Goff needed to know where in the hospital Renfo's appointment was so that he could tell the officer who would be escorting her and also for VA documentation purposes.

2

information and would not provide it over an intercom in the waiting area where others could hear about the nature of her appointment.  But Goff insisted that under the VA's procedures, he needed this information.  During this conversation, Renfo became agitated and began yelling.  Goff described Renfro's conduct as loud and boisterous.  Goff then requested help from the hospital's police services in dealing with Renfro.

Sergeant Ronald Brown and Officer Rodney Fausnaugh then went into the emergency room waiting area to meet with Renfro.  Fausnaugh, who observed that Renfro was shouting and agitated, took her identification from Goff.  He explained that he was holding her identification while he investigated the incident.  Renfro then yelled at Fausnaugh that he was holding her identification hostage. Fausnaugh asked Renfro where her appointment was, but she refused to tell him. When Brown asked Renfro to lower her voice and calm down, she became louder. Renfro then demanded to see the patient advocate, and the officers agreed.  During this interaction in the waiting area, a triage nurse who had been working with a patient came out to see what was going on because of the noise Renfro was making.

The officers escorted Renfro to the patient advocate's office.  To avoid taking Renfro through multiple areas in the hospital where other patients were present, they walked her outside and around the building.  While they were

3

walking outside, Renfro told the officers that she could not believe the way they were treating her and that she was a "n***** of the VA." Trial Tr. at 39 (Mag. Doc. No. 76).[2] Renfro told the officers that she was not using the term as a racial slur but instead to express that she felt she was being "disenfranchised." *Id.* When Fausnaugh told her that her language was inappropriate, Renfro repeated the phrase several times and told Fausnaugh she could say what she wanted.

After walking to another entrance, Renfro and the officers reentered the VA building. To reach the patient advocate's office, they had to walk through the day surgery area where approximately 20 to 30 people were sitting, including patients waiting for surgery and families waiting for patients to come out of surgery. When they walked through this area, Renfro yelled about how she was being treated as a Muslim women and stated that she was being treated "as a n*****." *Id.* at 41. According to the officers, Renfro was creating a scene and causing everyone to look at her. Once again, because of the noise Renfro was making, an employee left her office to see what was happening.

When they reached the patient advocate's office, the officers directed Renfro to stay in the patient advocate's waiting room. Renfro continued to shout, and Brown directed her to lower her voice because others were waiting. Renfro responded that she did not have to be quiet. Brown then went to get Michelle

---

[2] Citations to "Mag. Doc." refer to numbered docket entries in the case before the magistrate judge.

Howard, a patient advocate, and let her know that Renfro was waiting.  Howard agreed to talk with Renfro.  Because Renfro was so loud, Howard shut the doors to other employees' offices so that they would not be disturbed.  In addition, other staff working nearby came out of their offices to see what was going on.  Howard reassured these employees that everything was fine and that police officers were present.

When Howard came out to talk to Renfro, Renfro told her that Fausnaugh was holding her driver's license hostage and again stated that she was being treated "as a n*****."  *Id.* at 42.  When Howard told Renfro "[t]hat's enough," the officers directed Renfro to leave.  *Id.*  Fausnaugh placed a hand on Renfro's elbow to escort her out of the patient advocate's office.  Renfro told Fausnaugh not to touch her because she was a Muslim woman.  As the officers escorted Renfro back through the day surgery area, she accused the officers of mistreating her because she was a Muslim woman.  When the officers told her to lower her voice, she refused and asserted that she was exercising her First Amendment rights.

When Fausnaugh and Renfro reached the exit, Renfro again stated that the officers were treating her like a "n*****."  *Id.* at 43.  At that point, Fausnaugh arrested Renfro for disorderly conduct.   At the time of the arrest, Fausnaugh prepared a notice charging Renfro with disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11), a petty offense.

### B.    Procedural History

#### 1.    Proceedings Before the Magistrate Judge

Renfro was tried for the offense in a bench trial before a magistrate judge. At the trial, Goff, Fausnaugh, Brown, and Howard testified for the government.  At the close of the government's case, Renfro moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  She argued that because 38 C.F.R. § 1.218(b)(11) was a penalty provision that set out no substantive charge, the government had to prove that she committed the substantive offense found in 38 C.F.R. § 1.218(a)(5), meaning the government had to show that she made a loud, boisterous, or unusual noise that interfered with the operation of the facility. She asserted that the government's evidence failed to satisfy this standard.

In response, the government addressed the relationship between § 1.218(a)(5) and (b)(11).  The government explained that (a)(5) was the substantive provision and (b)(1) was the penalty provision, both of which prohibited Renfro's conduct.  The magistrate judge denied the motion for judgment of acquittal.

Renfro then testified in her own defense.  She explained that she initially refused to disclose the nature of her appointment because that information was confidential and the waiting area was filled with people.  She claimed that she was loud when talking to Goff because it was hard to communicate through the

6

intercom.  She denied being willfully loud, boisterous, or unusually noisy that day.  She explained that if she was loud, it was the result of a surgery to her vocal cords that left her unable to control the volume of her voice when she was under stress.  She produced the medical certificate showing that she had had surgery on her voice box.

After the trial, the magistrate judge issued a written decision finding that the government proved beyond a reasonable doubt that Renfro engaged in disorderly conduct.  The magistrate judge found credible the government witnesses' testimony describing Renfro's conduct.  Based on this testimony, the magistrate judge concluded that Renfro's conduct created loud, boisterous, and unusual noise.  In addition, the magistrate judge found that Renfro's conduct was so disruptive that it caused several VA employees to interrupt their work when, upon hearing Renfro, they exited their offices to see what was causing the commotion.

The magistrate judge also determined that Renfro knowingly created the noise.  The magistrate judge found unconvincing Renfro's testimony that a vocal cord surgery left her unable to control her volume because when the officers asked Renfro to lower voice, she told the officers that she would not comply and could say whatever she wanted.

At sentencing, the magistrate judge ordered to Renfro to pay a fine and sentenced her to three years of non-reporting probation.  As a condition of her

7

probation, Renfro was required to check in with VA law enforcement upon arriving at a VA facility to receive healthcare and to be escorted to her appointment.

### 2.    Proceedings Before the District Court

Renfro appealed her conviction to the district court, arguing that her conviction should be reversed because the disorderly conduct regulation was unconstitutionally vague and there was insufficient evidence to convict her of the offense.  The district court rejected both of these arguments and affirmed her conviction.

Before addressing the merits of Renfro's arguments, the district court identified the elements of the offense that she was charged with violating. Although the notice that Fausnaugh prepared charged Renfro with violating § 1.281(b)(11), the district court concluded that it had to look to both § 1.281(a)(5)—which set forth the substantive offense—and (b)(1)—which set forth the penalty—to determine the elements of her offense.  The district court concluded that these provisions should be read together and required the government to prove that Renfro created noise of the type that tended to be disruptive.

The district court then rejected Renfro's vagueness challenge.  The court explained that a person of ordinary intelligence entering a VA facility would

8

understand that she could not act in a way that would interfere with the provision of medical care.  Because a person of ordinary intelligence would know what was prohibited under the regulation, the district court concluded that it was not unconstitutionally vague.

The district court also rejected Renfro's challenge to the sufficiency of the evidence.  The court concluded a reasonable factfinder could find from the testimony of the government's witnesses that Renfro created loud, boisterous, and unusual noise when she was yelling and agitated in the emergency waiting area, the day surgery area, the patient advocate's waiting room, and near the hospital exit.  The court also concluded that a reasonable factfinder could find that Renfro's conduct would tend to disturb the normal operation of a VA facility because her conduct drew multiple VA employees out of their offices to see what was going on.  Accordingly, the district court affirmed Renfro's conviction.  This is Renfro's appeal.

## II.    STANDARDS OF REVIEW

In this case, our review of the magistrate judge's decision functions essentially as "a second tier of appellate review" after the district court's review. *United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010).  We review *de novo* the trial court's interpretation of the relevant federal regulation.  *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1320

9

(11th Cir. 2010). We also review *de novo* the trial court's determination that the regulation is constitutional. *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008). And we review *de novo* whether there was sufficient evidence to support Renfro's conviction, considering the evidence in the light most favorable to the government and drawing all reasonable inferences as well as credibility determinations in the government's favor. *United States v. Capers*, 708 F.3d 1286, 1296-97 (11th Cir. 2013). Under this standard, we may not overturn the verdict "if any reasonable construction of the evidence would have allowed the [factfinder] to find the defendant guilty beyond a reasonable doubt." *Id.* at 1297 (internal quotation marks omitted).

## III.   LEGAL ANALYSIS

Renfro argues that her conviction should be overturned because the regulation she was convicted of violating is unconstitutionally vague and there was insufficient evidence to support her conviction. Before we can address the merits of Renfro's argument, we must provide background on 38 C.F.R. § 1.218 and identify the elements the government had to prove to convict Renfro for disorderly conduct.

Congress delegated to the VA Secretary the authority to set regulations to maintain law and order on VA property, which includes the authority to promulgate regulations governing the rules for conduct on VA property. *See*

38 U.S.C. § 901(a)(1), (b)(1).  Congress provided that the violation of such regulations may be punished with a fine or imprisonment for up to six months.  *Id.* § 901(c).  Under this legislation, the VA Secretary promulgated 38 C.F.R. § 1.218, subsection (a) of which sets forth the substantive rules governing conduct on VA property.  One provision in subsection (a), labeled "Disturbances," prohibits

> [c]onduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language.

38 C.F.R. § 1.218(a)(5).

Subsection (b) sets forth the penalties for violating the rules of conduct set forth in subsection 1.218(a).  Subsection (b) provides that "[c]onduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal from the premises."  *Id.* § 1.218(b).  In addition, subsection (b) sets the fine to be assessed when a person engages in "[d]isorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, officers, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility."  *Id.* § 1.218(b)(11).

11

In identifying the elements of Renfro's offense, the magistrate judge and the district court looked to both § 1.218(a)(5) and (b)(11).[3] On appeal, Renfro argues that magistrate and district judges erred by looking to both § 1.218(a)(5) and (b)(11) for the elements of the offense. Instead, she contends that only § 1.218(b)(11) defined her offense, meaning, she argues, that the government was required to prove she knowingly created a loud, boisterous, and unusual noise that impeded the VA's normal operations.

Renfro argues on appeal that the magistrate judge and the district court erred in looking to § 1.218(a)(5) to determine the elements of her offense. But at trial, she argued to the magistrate judge that because § 1.218(b)(11) sets forth only a penalty, the government had to prove that she committed the substantive offense set forth in § 1.218(a)(5). Because "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party," the invited error doctrine precludes our review of Renfro's argument that the magistrate judge should have looked only to § 1.218(b)(11) for the elements of

---

[3] The magistrate judge and the district court formulated the elements of the offense in slightly different ways. The magistrate judge explained that the government had to prove Renfro's conduct created a loud or unusual noise that caused a disruption, which impeded VA employees from performing their usual duties. The district court determined that the government had to prove that Renfro's conduct created a noise of the type that would tend to disturb the normal operation of a VA facility. Although the district court concluded that the government was not required to prove that the noise Renfro created was loud, boisterous, and unusual, it nonetheless concluded in the alternative that a reasonable factfinder could have found beyond a reasonable doubt that Renfro's noise was loud, boisterous, and unusual.

12

her offense. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted).

In any event, we need not decide today the precise elements that the government had to prove to convict an individual of disorderly conduct under § 1.218. This is because even if we assume, as Renfro contends, that the government had to prove her conduct created loud, boisterous, and unusual noise that disrupted the normal operations of the VA, her challenges would still fail.

## A.     The Disorderly Conduct Regulation Is Not Unconstitutionally Vague.

First, Renfro argues that her conviction should be reversed because the regulation is unconstitutionally vague. Because she fails to specify whether her challenge is facial, as-applied, or both, we assume, like the district court did, that she made both facial and as-applied challenges. Both challenges fail, however.

A statute or regulation is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Here, Renfro contends that the regulation is unconstitutionally vague because it authorizes or encourages discriminatory enforcement. The Supreme Court has explained that a statute encourages discriminatory enforcement when it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc

13

and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

A law or regulation is vague when it leaves government actors "free to decide,

without any legally fixed standards, what is prohibited and what is not in each

particular case." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966).

We reject Renfro's as-applied challenge because the regulation

unambiguously covered her conduct. *See Holder v. Humanitarian Law Project*,

561 U.S. 1, 21 (2010) (holding that as-applied challenge to statute failed when the

statute's "terms [were] clear in their application to plaintiffs' proposed conduct").

As we describe in more detail below, it was clear that Renfro's conduct caused a

loud, boisterous, and unnatural noise that disrupted the operations of the VA.

We also reject Renfro's facial challenge to the regulation. The Supreme

Court has provided us with guidance on when a statute or regulation that prohibits

disorderly conduct is unconstitutionally vague. In *Grayned*, the Court held an anti-

noise ordinance, which prohibited noises that disturbed or tended to disturb the

peace or good order in a classroom, was not unconstitutionally vague. 408 U.S. at

110-11. Although the ordinance failed to specify the level of disturbance required,

the Supreme Court explained that the ordinance's purpose of protecting schools

made it apparent "that the measure is whether normal school activity has been or is

about to be disrupted." *Id.* at 112. Because the ordinance was limited to the school

context "where the prohibited disturbances are easily measured by their impact on

the normal activities of the school," the ordinance gave fair notice to those who were regulated. *Id.*

Likewise, we conclude that the regulation here is not unconstitutionally vague because it gives fair notice to those who may be affected. Even if the regulation failed to identify the precise quantum of noise or disturbance that is required, we can discern the required level of noise or disruption by looking to the context where the regulation applies—that is, VA property. *See* 38 C.F.R. § 1.218(a) (explaining that the regulation "appl[ies] at all property under the charge and control of VA"). As the district court explained, "(1) the purpose of VA facilities is to serve and care for veterans, (2) many veterans have heightened sensitivities, and (3) disturbances, including loud noises, can trigger psychological reactions from the VA patient population." Order at 12 (Doc. 17)[4] (quoting *United States v. Szabo*, 760 F.3d 997, 1003 (9th Cir. 2014)). A person of common intelligence would understand that the regulation prohibited noises likely to disturb the provision of care or services to veterans.

Nonetheless, Renfro contends that the regulation is void for vagueness because she raised her voice and engaged in similar conduct several times before being arrested. But Renfro confuses arbitrary enforcement with officer discretion. It certainly is true that the officers observed Renfro engage in disorderly conduct

---

[4] Citations to "Doc." refer to numbered docket entries in the district court record in this case.

15

several times that day before arresting her.  But the officers had discretion not to arrest Renfro when they first observed her committing a petty offense and instead to try to de-escalate the situation.  When the attempts to calm Renfro failed and she continued to make disruptive noise, the officers were permitted to arrest her.  *See Grayned*, 408 U.S. at 1114 ("As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible.").  Accordingly, we agree with the magistrate judge and the district court that the regulation is not unconstitutionally vague.

## B.     There Was Sufficient Evidence to Support Renfro's Conviction.

Renfro also argues that the government failed to produce sufficient evidence to support her conviction.  More specifically, she argues that the government failed to present evidence that: she made noise, the noise she made was unusual for a hospital setting, her conduct caused a disturbance, or she acted knowingly.  But we conclude there was sufficient evidence as to each element.[5]

First, there is no question that Renfro made noise.  A noise, of course, is merely a "sound."  *Noise*, Webster's Third New International Dictionary Unabridged (2002).  There is no doubt that when Renfro was yelling in the emergency room waiting area, the day surgery area, and the waiting room for the

---

[5] Renfro does not challenge that there was sufficient evidence to find that if she made noise, the noise was loud and boisterous.  Indeed, her initial brief concedes that she "raised her voice multiple times."  Appellant's Br. at 32.

patient advocate's office, as well as at the exit to the VA, she created sound and thus noise. Renfro argues that because she was communicating thoughts and ideas, her speech cannot qualify as noise. But noise is broadly defined to include any sound, including speech.[6]

Second, Renfro's conduct created noise that was unusual. The parties agree that for this element to be satisfied, Renfro's noise had to be uncommon. Even though noise associated with conversations, and at times loud conversations, is common in a hospital or VA facility, a reasonable factfinder could have concluded that the level of noise Renfro created was so great that it was uncommon. Her yelling caused multiple employees to exit their offices to find out what was going on, showing that the level of noise was uncommon at such a facility. A reasonable factfinder could therefore find that Renfro's noise was unusual.

Third, there was sufficient evidence for a reasonable factfinder to find that Renfro's noise caused a disturbance that impeded the VA's normal operations. This evidence includes the testimony that as a result of Renfro's yelling and screaming, VA employees who had been working left their offices to check on what was happening.

---

[6] Renfro contends that "noise" must exclude speech because § 1.218(a)(5) separately provides that "the use of loud, abusive, or otherwise improper language" constitutes disorderly conduct. She argues that the prohibition on loud language would be meaningless if such communications were already forbidden as loud noise. But even if we accepted Renfro's argument, her conduct still would violate § 1.218(a)(5) as the evidence was sufficient to show that she used loud and improper language.

17

Renfro argues that the evidence was insufficient because no VA employee testified he or she was delayed or prevented from performing actual work duties as a result of Renfro's conduct. But Fausnaugh testified that as he escorted Renfro through the facility, he observed a triage nurse who had been working leave his station as a result of Renfro's noise.[7] In addition, Howard, the patient advocate, testified that she was required to close the doors to offices so that employees who were working with patients would not be distracted. From this evidence, a reasonable factfinder could infer that Renfro's shouting impeded operations at the VA.

Fourth, the evidence was sufficient to prove that Renfro acted knowingly. Renfro contends that the intent element was not satisfied because she testified she had trouble modulating the volume of her voice after a voice box reduction surgery. But the magistrate judge explicitly found that this rationale was unconvincing; this credibility determination was not clearly erroneous as Renfro herself testified that she was resistant and frustrated and had raised her voice. And when the officers directed her to quiet down, she told them that they could not tell her what to do, suggesting that she chose to be loud and disruptive.

---

[7] Renfro argues that this evidence was insufficient because the triage nurse could have completed the project he was working on. But we must draw all reasonable inferences in favor of the government: a reasonable factfinder could infer from this testimony that the triage nurse was disrupted by Renfro.

18

The evidence, when viewed in the light most favorable to the government, was sufficient to establish that Renfro made knowingly made unusual noise that disrupted the normal operations of the VA hospital.  We thus reject Renfro's challenge to her conviction on the basis of insufficient evidence.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

**AFFIRMED.**