**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                          )   BAP No. EC-15-1291-DTaJu
                                )
YOUSIF H. HALLOUM,              )   Bk. No. 12-21477-CMK
                                )
               Debtor.          )
_____ )
                                )
YOUSIF H. HALLOUM,              )
                                )
               Appellant,       )
                                )
v.                              )   **M E M O R A N D U M**[1]
                                )
MCCORMICK, BARSTOW, SHEPPARD,   )
WAYTE & CARRUTH; HILTON A.      )
RYDER,                          )
                                )
               Appellees.       )
_____ )

Submitted Without Oral Argument
on June 23, 2016

Filed - June 28, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Bankruptcy Judge, Presiding

Appearances:    Appellant Yousif H. Halloum, pro se on brief;
                Scott M. Reddie of McCormick, Barstow, Sheppard,
                Wayte & Carruth LLP on brief for appellees.

Before:   DUNN, TAYLOR, and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Previously, chapter 7[2] debtor, Yousif H. Halloum, appealed an order ("Fee Order") awarding chapter 11 administrative expenses to his former attorney. The Panel vacated and remanded to the bankruptcy court based on a lack of adequate findings to support the Fee Order. (See Halloum v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Halloum), BAP No. EC-14-1219-JuKuPa, 2015 WL 2386554 (9th Cir. BAP May 19, 2015)("Halloum I").

On remand, the bankruptcy court made detailed findings and reinstated the Fee Order ("Reinstated Order"). The debtor has now appealed the Reinstated Order.[3]

We AFFIRM.

## I. BACKGROUND

Because the facts underlying this dispute are set forth in detail in Halloum I, we need only summarize them here.

Mr. Halloum filed a chapter 11 petition on January 26, 2012. McCormick, Barstow, Shepard, Wayte & Carruth LLP ("Law Firm") was employed as chapter 11 counsel for Mr. Halloum on Mr. Halloum's application filed on February 10, 2014. The order ("Employment

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[3] On April 1, 2016, Mr. Halloum filed in this appeal his "Ex Parte 'Appellant's Supplemental Brief' With Request to Supplement the Records Regarding Trustee's Violation of Bankruptcy Code § 707(b)- Substantial Abuse." The caption contains four other pending BAP appeals. The substance of the pleading has nothing to do with the matter presently before this Panel. Accordingly, we do not address it.

-2-

Order") authorizing the Law Firm's employment stated in relevant part:

> Compensation will be at the 'lodestar rate' at the time that services are rendered in accordance with the Ninth Circuit decision in In re Manoa Fin. Co., 853 F.2d 687 (9th Cir. 1988). No hourly rate referred to in the application is approved unless unambiguously so stated in this order or in a subsequent order of this court.

During the pendency of the chapter 11 case, the Law Firm submitted five applications ("Interim Fee Applications") for payment of interim fees and expenses, on May 2, June 27, and September 6, 2012, and on January 31 and May 28, 2013. Each of the Interim Fee Applications was supported by a declaration signed by Mr. Halloum, which stated that he had reviewed the Interim Fee Applications and approved the fees and expenses as requested. The fees approved by Mr. Halloum in this process totaled $116,067. The Law Firm also filed an interim fee application on October 8, 2013, but withdrew it after Mr. Halloum refused to provide a declaration approving the fees. For the first time Mr. Halloum now asserted that Hilton A. Ryder, a partner with the Law Firm, had agreed that the Law Firm would represent Mr. Halloum in the chapter 11 case for a fixed fee of $40,000.

Mr. Halloum was unsuccessful in negotiating a consensual plan with Midwest Bank, N.A. ("Bank"), the secured creditor with liens on the real and personal property with which Mr. Halloum operated an ARCO gas station and convenience store. After Mr. Halloum used the Bank's cash collateral without making the adequate protection payments upon which such use was conditioned, the bankruptcy court, on November 22, 2013, appointed a

chapter 11 trustee ("Trustee"). Mr. Halloum's case ultimately was converted to chapter 7 on February 12, 2014.

On March 4, 2014, the Law Firm filed a motion ("Final Fee Application") seeking additional compensation for its work as counsel for Mr. Halloum in the chapter 11 case in the amount of $114,004.50 and expenses of $2,892.56 and authorization to pay all unpaid fees for prior award periods.[4] Mr. Halloum opposed the Final Fee Application, again asserting that Mr. Ryder had agreed that the Law Firm would represent Mr. Halloum for a fixed fee of $40,000. Mr. Halloum also asserted that the Law Firm did not adequately represent his interest in negotiating approval of a chapter 11 plan and attributed the conversion of the bankruptcy case to chapter 7 and the loss of his business to Mr. Ryder's actions or inactions. Mr. Halloum also sought recoupment from the Law Firm of fees previously approved and paid on an interim basis. After hearing, the bankruptcy court entered the Fee Order approving the Final Fee Application.

The Halloum I Panel vacated the Fee Order on Mr. Halloum's appeal, and the matter was remanded to the bankruptcy court to make findings to support the Fee Order.

On remand, the bankruptcy court held an evidentiary hearing August 12-13, 2015, at which Mr. Ryder testified as to the nature of his contractual relationship with Mr. Halloum.[5] Mr. Halloum

---

[4] If approved, the Law Firm's total compensation, fees and expenses, for chapter 11 services provided to Mr. Halloum would be $232,974.06.

[5] Mr. Halloum refers to the transcripts of this hearing
(continued...)

-4-

exercised his right to cross-examine Mr. Ryder with respect to the terms of their agreement regarding Mr. Ryder's fees in the chapter 11 case. On August 26, 2015, the bankruptcy court entered its "Order on Remand From Bankruptcy Appellate Panel" ("Remand Order"), which contained its findings of fact and conclusions of law, and which we summarize for purposes of this Memorandum.

Mr. Ryder, a practicing attorney since 1972, has had substantial experience representing debtors in possession in bankruptcy reorganization cases. He was the partner at the Law Firm responsible for representing Mr. Halloum in his chapter 11 case. In his decades of practice, Mr. Ryder never has undertaken to represent a debtor in possession on a fixed fee basis.

On January 20, 2012, Mr. Halloum executed a "Chapter 11 Retainer Agreement" ("Retainer Agreement"), in compliance with Cal. Bus. & Prof. Code § 6148, which contained the following fee

[5](...continued)
repeatedly in his Opening Brief. The transcripts are found as docket numbers 217 (August 12) and 216 (August 13) in adversary proceeding 15-2091. That adversary proceeding was filed by Mr. Halloum in California State Court and removed to the Bankruptcy Court (by way of the Bankruptcy Court in the Northern District of California) by the chapter 7 trustee. In the adversary proceeding complaint, Mr. Halloum names as defendants many of the attorneys who had performed services during the chapter 11 case. As most relevant to the issue in this appeal, Mr. Halloum alleged a malpractice claim against the Law Firm. The August 12-13 hearing appears to have been largely about matters raised in the adversary proceeding, but the evidentiary hearing on the Final Fee Application was a discrete part of the record, appearing at pp. 104-113 of the transcript for the August 12 hearing and pp. 7-45 of the transcript for the August 13 hearing.

clause:

> Client has deposited $40,000 which shall be held by Attorneys as a retainer and filing fee to be used to pay costs and expenses and legal fees. When any deposit is exhausted, Client shall make additional deposits as requested in writing by Attorneys. Any unused deposit at the conclusion of Attorneys' services may be applied by Attorneys to outstanding amounts owing by Client in connection with other matters handled by Attorneys for Client or refunded by Attorneys to Client at Attorneys' option.

> Attorneys' charges for legal services will be established and based upon certain factors, which will include but not be limited to hourly rates. The current hourly rates for Attorneys' personnel are specified in Exhibit "A." In addition to the time involved, fees charged by Attorneys will be based upon the nature of the matter, extraordinary results obtained, and the learning and experience of the lawyers involved.

In executing the Retainer Agreement, Mr. Halloum signed it as "approved and accepted," and paid the $40,000 deposit to the Law Firm. The bankruptcy court found that without the signed Retainer Agreement and the $40,000 deposit, the Law Firm would not have filed the chapter 11.

Attached to the chapter 11 petition filed on January 26, 2012, was the Disclosure of Compensation of Attorney for Debtor form ("Fee Disclosure"), signed by Mr. Ryder on behalf of the Law Firm, which stated in relevant part:

> For legal services, I have agreed to accept $38,954.00. Prior to the filing of this statement I have received $38,954.00.

The Fee Disclosure further stated that in return for the above-disclosed fee, "I have agreed to render legal service for all aspects of the bankruptcy case, including: representation of the debtor in adversary proceedings and other contested bankruptcy matters."

On February 10, 2012, Mr. Halloum filed with the bankruptcy court his application to employ the Law Firm ("Employment Application"). The Employment Application did not mention a fixed fee compensation arrangement. Instead, the Employment Application provided that the Law Firm was to be employed "under a general retainer" and disclosed that the Law Firm held $38,954 on account for attorneys' fees and $1,046 on account for filing fees. The bankruptcy court understood that, as requested, the Law Firm's employment was to be on an hourly basis and approved the Employment Application. The Employment Order specified that compensation would be on a "lodestar" basis, i.e., by multiplying the prevailing hourly rate by the number of hours reasonably and necessarily expended in the representation.

The bankruptcy court found that "Mr. Halloum, late in the case, seized upon the [Free [Disclosure . . . as connoting a fixed fee and invalidating the [Retailer [Agreement." The bankruptcy court concluded that the Fee Disclosure, made in compliance with Rule 2016(b), did not supplant or supersede the Retainer Agreement.

The bankruptcy court further found that Mr. Halloum (1) had approved and signed each of the five Interim Applications filed by the Law Firm during the course of the chapter 11 case, (2) did not assert in any of the Interim Applications that they were unwarranted because the Law Firm had agreed to a $38,954 fixed fee, and (3) paid the Law Firm the amounts the bankruptcy court had allowed based on the Interim Applications.

After the chapter 11 case had been pending for twenty months, Mr. Halloum sent Mr. Ryder an email regarding the next

proposed interim fee application ("Proposed Application"). In that email, Mr. Halloum stated that he recognized that the chapter 11 case required more work than had been anticipated, but that he would not approve the fees that were being requested at that time. Two days later Mr. Halloum sent another email to Mr. Ryder regarding the Proposed Application. In neither of these emails did Mr. Halloum assert that Mr. Ryder had agreed to a fixed fee.

The bankruptcy court found that Mr. Ryder had worked diligently throughout the chapter 11 case to fashion a plan that was both feasible and confirmable. That work was not successful because (1) the Bank had come to mistrust Mr. Halloum (as evidenced by the adversary proceeding the Bank filed against Mr. Halloum seeking to except its debt from discharge on the theory that it would not have extended credit to Mr. Halloum had he disclosed his loss of $500,000 in stock market speculation), and (2) Mr. Halloum had been "intransigent" regarding a number of points about which he would neither compromise nor accept advice of counsel.

Citing § 328(a), the bankruptcy court concluded that it was not permitted to change the basis of the Law Firm's compensation, which had been approved on a retainer agreement containing reasonable terms and conditions of employment, "unless the approved terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Reinstated Order at 8:9-16.

The bankruptcy court then evaluated the Final Fee

-8-

Application, including fees previously awarded on an interim basis with respect to the Interim Fee Applications, applying the factors to be considered pursuant to § 330(a)(3) and (4). The bankruptcy court concluded that the time spent on services was appropriate to the tasks involved, that the rates charged were appropriate, that the services performed were necessary to the administration of the case, that the time billed for the services performed was reasonable and commensurate with the "complexity, importance, and nature of the problem, issue, or task addressed," that "Mr. Ryder is one of the most skilled and experienced counsel practicing in this district in the bankruptcy field and specializing in chapter 11 reorganizations," and that the compensation was reasonable based on customary compensation by comparable skilled practitioners in cases other than title 11 cases.

Based on its findings of fact and conclusions of law, the bankruptcy court "reinstated in full" the Fee Order. Mr. Halloum once again filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion when it entered the Reinstated Order.

## IV. STANDARDS OF REVIEW

The bankruptcy court's approval of administrative expenses and award of attorney's fees is reviewed for abuse of

-9-

discretion. Hale v. U.S. Tr., 509 F.3d 1139, 1146 (9th Cir. 2007); Film Ventures Intel, Inc. v. Asher (In re Film Ventures Intel, Inc.), 75 BR. 250, 253 (9th Cir. BAD 1987). The fact findings underlying a bankruptcy court's decision are reviewed for clear error. American-Arab Anti-Discrimination Comm. v. Thornburgh, 970 F.2d 501, 506 (9th Cir. 1991).

Under the abuse of discretion standard, we reverse only where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from facts in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011), citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

## V. DISCUSSION

The fundamental issue before the Panel is whether the bankruptcy court abused its discretion when it approved the Final Fee Application. As a threshold matter, we observe for Mr. Halloum that the role of the trial court is to weigh the evidence presented to it and from that evidence to determine the facts that govern the ultimate decision. Necessarily, this means that the bankruptcy court will accept as true some evidence and reject other contradictory evidence. The mere presentation of particular "evidence" by a party is not controlling.

Conversely, it is not the role of the Panel to supplant that fact-finding process, but instead to review the bankruptcy court's fact findings. In reviewing fact findings, if the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety," the appellate court may

not reverse, even if it was convinced that it would have weighed the evidence differently. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id.

The interplay of four documents is at the heart of this dispute: the Retainer Agreement, the Fee Disclosure, the Employment Application, and the Employment Order. Mr. Halloum's appeal flows from the faulty premise that only the Fee Disclosure governs the amount of fees to which the Law Firm was entitled in its representation of Mr. Halloum in his chapter 11 case.

Mr. Halloum Executed the Retainer Agreement

Mr. Halloum "categorically denies" that he ever signed the Retainer Agreement. In his excerpts of record, Mr. Halloum includes the written opinions of two forensic document experts. Although Mr. Halloum included these written opinions in his exhibits submitted to the bankruptcy court, he did not call either expert as a witness at the evidentiary hearing.[6]

The signed Retainer Agreement was admitted into evidence. Mr. Ryder testified to the circumstances under which the Retainer Agreement was signed. Mr. Halloum was provided the opportunity to cross-examine Mr. Ryder but did not challenge his testimony on this point. The Reinstated Order specifically states that the bankruptcy court considered Mr. Halloum's testimony that he did

_____

[6] Mr. Halloum states in his Opening Brief that the experts are willing to testify before the Panel. However, it is not within the purview of the Panel as an appellate body to take evidence.

-11-

not sign the Retainer Agreement, compared the signature on the Retainer Agreement with other signatures in the record known to have been made by Mr. Halloum, noted that the signatures are variable, and concluded that Mr. Halloum signed the Retainer Agreement.

The bankruptcy court found credible Mr. Ryder's testimony that in decades of practice he had never undertaken the representation of a chapter 11 debtor-in-possession on a fixed fee basis. Finally, the bankruptcy court further determined that Mr. Ryder would not have filed the chapter 11 case on Mr. Halloum's behalf had Mr. Halloum not signed the Retainer Agreement and paid the retainer.

Mr. Halloum asserts that he was denied procedural due process because (1) he was never provided an opportunity to conduct even limited discovery into Mr. Ryder's universal practices and (2) he was denied a meaningful opportunity to present evidence both that his signature was forged and that for at least one former client, Mr. Ryder had provided representation on a fixed fee basis. Nothing in the record before us reflects that Mr. Halloum was precluded from conducting discovery.[7] As to

---

[7] After Mr. Halloum presented his case-in-chief in the Adversary Proceeding, the following discussion ensued:

MR. HALLOUM: So everything I submitted, your Honor, is supported by records, by documents.

THE COURT: I have gone through all the exhibits that you have presented, and that is what you say you have; right?

MR. HALLOUM: For now, yes, but with further discovery, I am
(continued...)

-12-

his assertion that he was denied a meaningful opportunity to present evidence, the record reflects otherwise. The issue of the validity of the signature on the Retainer Agreement was raised at the evidentiary hearing on August 12, 2015; the bankruptcy court made clear at that time that evidence was necessary and that the parties were to present their evidence on that issue at the evidentiary hearing on August 13, 2015. Despite the colloquy on August 12, only Mr. Ryder presented additional evidence.

Because the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse.

### The Fee Disclosure Did Not Supersede the Retainer Agreement

Mr. Halloum next asserts that, even if he did sign the Retainer Agreement, the subsequent execution by Mr. Ryder of the Fee Disclosure served to render the Retainer Agreement "null and void."

The Fee Disclosure was made pursuant to § 329(a), as implemented by Rule 2016(b). Section 329(a) provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the

---

[7](...continued) certain there will be more offensive issues.

See August 12 hearing transcript at 104:12-17. It does not appear that the issue of "further discovery" was ever discussed.

case by such attorney, and the source of such compensation.

Compliance with § 329(a) is mandatory. For purposes of chapter 11, it generally serves to advise the court and interested parties of payments received from the debtor in the prior year.[8] In this case, the payment that was received was the retainer, deposited with the Law Firm pursuant to the Retainer Agreement, in the amount of $40,000. Rule 2016(b) requires supplemental disclosures in the event additional payment is received from the debtor. As noted by the bankruptcy court, the Employment Application, filed after the Fee Disclosure, provided the most important and complete disclosures regarding fees in Mr. Halloum's case. Both the Employment Application and the Interim Fee Applications served Rule 2016(b)'s purpose of disclosing supplemental compensation the Law Firm had received or would receive from Mr. Halloum.

The bankruptcy court entered the Employment Order based on its review of the Employment Application. At the time it considered the Employment Application, the bankruptcy court understood that the Law Firm's employment would be on an hourly basis, with compensation to be determined under the "lodestar" analysis, consistent with the customary method for compensation of chapter 11 professionals representing debtors-in-possession.

---

[8] We observe that the extensive litigation regarding whether the Law Firm had agreed to a fixed fee representation of Mr. Halloum likely could have been avoided had the Law Firm summarized the fee provisions which were set forth in the Retainer Agreement and stated its hourly rates in the Fee Disclosure.

The bankruptcy court noted in its findings that in the rare case where the compensation method deviates from what is customary, its employment order would leave no ambiguity regarding that deviation. That the bankruptcy court and all parties, with the exception of Mr. Halloum's protestations late in the case, proceeded under the understanding that the Law Firm's compensation would be on a lodestar basis, is supported by the fact that five Interim Fee Applications, supported by declarations of Mr. Halloum, were submitted by the Law Firm and approved by the bankruptcy court.

The record does not support Mr. Halloum's position that he delayed raising the issue publicly because of "duress" imposed upon him by Mr. Ryder in the form of threats to withdraw from representation if Mr. Halloum did not pay. Mr. Ryder testified that Mr. Halloum opposed the Proposed Fee Application because he could not pay it, not because it was not due. The court found that Mr. Ryder's proposal to postpone receipt of his compensation to a date after the effective date of any plan that might be confirmed affirmatively defeated any assertion of duress.

Mr. Halloum sets great store in the fact that Mr. Ryder admitted in his testimony that he had signed the Fee Disclosure. Mr. Halloum interprets this testimony as a "restatement" of the alleged fixed fee agreement. Alternatively, he suggests that the Fee Disclosure, when viewed with the Employment Application and the Interim Fee Applications, demonstrates the "inconsistencies" in Mr. Ryder's filings with the court regarding fees. Both arguments ignore the reality that the Fee Disclosure serves a different purpose than either an employment order or a fee award.

-15-

As such, the fact of its existence is not sufficient to "cap" chapter 11 compensation as Mr. Halloum argues.

### The Bankruptcy Court's Fee Award Is Supported By the Record

The bankruptcy court applied the correct law, § 330(a)(3), in evaluating the Final Fee Application. Section 330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded to . . . a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including --
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The bankruptcy court also determined that the compensation sought did not involve (1) unnecessary duplication of services, (2) services that were not reasonably likely to benefit the bankruptcy estate, or (3) services that were not necessary to the administration of the case. See § 330(a)(4).

We do not address Mr. Halloum's perceived errors in the record that relate to the bankruptcy court's recitation of the reasons the chapter 11 case was not successful, which findings support the "reasonable and necessary" component of the fee analysis. Although Mr. Halloum expressed to the bankruptcy court

his dissatisfaction with his representation by the Law Firm in at least two particulars, i.e., attempting to resolve a non-dischargeability claim through the plan rather than by achieving a dismissal of the adversary proceeding and refusing to seek subordination of the Bank's claim even though there was no legal basis for doing so, Mr. Halloum never questioned any specific time entry in the Final Fee Application. Similarly, Mr. Halloum does not raise on appeal any purported error by the bankruptcy court in approving any specific fees.

## VI. CONCLUSION

On remand the bankruptcy court made findings of fact and conclusions of law in support of the original Fee Order. Mr. Halloum did not oppose the amount of the fees awarded other than on the basis that the Law Firm had agreed to compensation for all services for a fixed fee of $40,000. The bankruptcy court's finding that Mr. Halloum signed the Retainer Agreement was not clear error. Further, the bankruptcy court's interpretation of the purpose and effect of the Fee Disclosure in light of § 329(a) and Rule 2016(b) was not error.

Accordingly, we AFFIRM the bankruptcy court's Reinstated Order.

-17-